STATE, EX REL. CHARLES THAYER, APPELLEE, v. SCHOOL DISTRICT OF CITY OF NEBRASKA CITY ET AL., APPELLANTS.

FILED FEBRUARY 5, 1916.  No. 19477.

1. **Schools and School Districts:** CONDUCT OF SCHOOLS. What shall be done in the common schools in an educational way is to be determined at school meetings held in each school district, and also by the officers of each school district as the statute may direct.

2. **Mandamus:** INSTRUCTION IN GERMAN: DUTY OF BOARD. Where the parents or guardians of 50 children above the fourth grade residing in such a school district as is referred to in section 6941, Rev. St. 1913, petition the school board of the said district requesting that German be taught in said school as an elective study, it is the duty of the board to comply with the prayer of the petition and to make provision for the teaching of German in said school as required by said section, and it may be compelled to do so by mandamus.

3. **Statutes:** CONSTRUCTION. The fundamental principle of statutory construction is ascertainment of the intent of the legislature. *People v. Weston*, 3 Neb. 312.

State, ex rel. Thayer, v. School District.

4. ———: ———. "In construing a statute, words should be given their usual meaning." *State v. Byrum*, 60 Neb. 384.

5. ———: ———: EXCEPTIONS. The court will not read into a statute exceptions not made by the legislature.

6. ———: ———. "Where a statute is clear and unambiguous in its terms, it is the duty of the court, in construing it, to give the language used by the legislature its plain and ordinary meaning." *State v. Bratton*, 90 Neb. 382.

7. ———: CONSTITUTIONALITY: PROVINCE OF COURTS. It is not for the court to inquire into the motives of the legislature in the enactment of laws, or to determine their wisdom, or the lack of it. *Stewart v. Barton*, 91 Neb. 96.

8. ———: CONSTRUCTION. It is for the legislature to determine the policy of any enactment it may make. The legislature and the courts each act in a separate capacity, and each is independent of the other.

9. ———: REPEAL BY IMPLICATION. "A legislative act complete in itself is not inimical to the provisions of section 11, art. III of the Constitution; and where such an act is repugnant to, or in conflict with, a prior law, which is not referred to nor in express terms repealed by the later act, the earlier statute is repealed by implication." *State v. Hevelone*, 92 Neb. 748.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*William H. Pitzer* and *D. W. Livingston*, for appellants.

*W. F. Moran* and *Jean A. Cobbey*, contra.

HAMER, J.

This is an appeal from the judgment of the district court for Otoe county in favor of the relator in a mandamus case touching the teaching of the German language in the Sixth street division of the school district of Nebraska City. The alternative writ relates that the city of Nebraska City is a municipal corporation having a population of 5,300 inhabitants; that the school district of the city of Nebraska City is a duly organized school district under the laws of the state, and comprises the city of Nebraska City and the surrounding country. It then sets up the names of the members of the board of education, and says that they con-

stitute the respondents. The school district appears to be divided into six divisions. It is alleged that there is one school building in each division in which school from the first to the eighth grades is being taught, and that said schools are under direct control of the board of education of said city. The relator alleges that he is a citizen of the United States and of the state of Nebraska and of the city of Nebraska City; that he resides in that division of said school district known as the Sixth street division, and has resided therein for a great many years, and that one of his children attends the said Sixth street school between the fifth and eighth grades; that on the 15th day of May, 1915, being more than three months previous to the opening of the fall term of said school for the year 1915, and in the said Sixth street division, there was a written request filed with said board of education signed by the relator and the parents or guardians of at least 50 pupils above the fourth grade attending said Sixth street school in said school district, and requesting that the German language should be taught in said division of said school district as an elective study; in the request the names of the pupils above the fourth grade are given, also the names of the parents or guardians, together with the house number and place of residence; that the respondents and the said board of education failed, neglected and refused to provide for the teaching of said German language and refused to comply with the request; that the relator and the petitioners signing said request are without an adequate remedy at law unless the respondents and the board of education are compelled to perform their duty by an order of the court; that the relator and the signers of said request and numerous other persons in the said Sixth street division of said school district will be deprived of the right to have said German language taught in the said division of said school as is provided by the laws of the state of Nebraska.

The respondents filed an answer admitting the population of the city of Nebraska City as alleged, also that the city is duly organized and that the school district is sub-

divided, and that in the subdivision known as the Sixth street school there is one building in which school is taught under the direct control of said board of education; that the relator resides in said Sixth street division of said school; that there was a request filed as set out in the alternative writ, which was signed by the parents or guardians of 50 children who would attend said school during the 1915 fall term; that the said school children were in the grades above the fourth grade; that the respondents, as members of the board of education, refused to provide for the teaching of the German language in said Sixth street school in the grades above the fourth grade, as requested and as petitioned; that Charles Thayer, the relator, is a citizen of the United States and of the state of Nebraska and of Nebraska City, and that one of his children attends said school in the grade between the fifth and eighth grades. It is further alleged that no grade higher than the eighth grade is taught in said Sixth street school; that to provide for the study of the German language in the grades in said school above the fourth grade would require the expenditure of a considerable amount of money both in providing facilities and rooms for class work and the means of giving instruction, and that before incurring this expense the respondents felt justified in canvassing the signers of said petition for the purpose of ascertaining whether or not the persons who had signed the same as parents and guardians of the children mentioned had intended, by so signing, to elect that the children represented by them, and going to make up the number of children set out in said petition, should take instruction in the German language if such instruction was provided for; that the canvass was made by impartial persons under the direction of the respondents beginning about June 20, 1915, and that the same was completed about August 2, 1915; that in making this canvass the committee of the defendants to whom the matter was referred addressed a communication to the signers of said petition. It appears by the communication that an ex-

pression was asked in writing, and that this expression was taken. It is alleged that by reason of this canvass the result is shown that the parents and guardians of 49 pupils signing said petition declared when they signed the same that they did not understand or.intend by so doing that they were electing to have their said children study the said German language, and that they did not so elect; that there remained parents and guardians, signers of said petition, actually electing to have their children study the German language in said grades in the fall term of 1915, of not more than 15 children.

The respondents further alleged that the Sixth street school was a common school providing free instruction in the elementary subjects to all pupils of school age in that subdistrict; that the said school was maintained by general taxation and by apportionment from the general school fund of the state; that it had an established course of study in the common branches, including instruction in the English language, but not in any foreign language; that said course of study was in harmony with that prescribed and recommended by the department of education of the state of Nebraska, and corresponds with that in other grade schools in the state; that, according to this course of study, all pupils in attendance at said school were classified; that, as so conducted according to a long-established and universally recognized custom determining and defining common schools and the common branches according to a long-established and universally recognized public policy of the state in the plan and organization of its public schools, particularly as expressed, understood and intended by the Constitution of the state and by the laws of the United States in making provision for the maintenance of such schools as common schools, the said law of the state of Nebraska known as chapter 31, Laws 1913, and now known as section 6941, Rev. St. 1913, in so far as it is sought to be invoked herein to require the said course of study in said Sixth street school to be amended by making provision for an elective

course of study in the German language in the grades of said school above the fourth grade, is contrary to the public policy of the state as declared and understood in sections 3-6, art. VIII of the Constitution of the state of Nebraska, and in sections 7 and 12 of the act of congress of April 19, 1864 (13 St. at Large, ch. 59, p. 47), known as the enabling act, providing the conditions for the admission into the Union of the state of Nebraska; that the effect of the departure from and violation of said policy as contemplated by the said act will be to greatly disturb the general class work in said grades and conflict with equal rights of others than the relator and the said petitioners, interfere with the orderly progress of said school work generally, and greatly detract from the efficiency of the general instruction in the common branches now provided in said grades, besides entailing great expense upon the taxpayers and revenues of the said school district, both in providing for facilities for the giving of said instruction and the expense of said instruction itself; that the effect of the said act of the legislature as applied to the said Sixth street school will be local and special, resulting in special privileges being granted to some individual pupils and patrons to the prejudice of others possessing equal rights in said school, and in an unequal and unfair distribution of the school funds and revenues by the Constitution and laws of Nebraska for the support and maintenance of common schools; that the said act of the legislature is unconstitutional and void in so far as it is claimed to be applicable to the schools of the class in which said Sixth street school falls, and for the following reasons: (1) It is class legislation, and provides a local and special law for the management of certain special and local public schools, in contravention of the express inhibition of section 15, art. III of the Constitution, prohibiting the passage by the legislature of Nebraska of local or special laws providing for the management of public schools, or granting special privileges to any individual. (2) It is violative of the provisions of sections 1, 4, 6, art. IX

of the Constitution, requiring taxation for the support of such schools to be uniform in rate and as to valuation of property. (3) The classification made and contemplated by said act is arbitrary, in that no discretion is allowed or conferred upon the governing authorities of the schools to which it relates concerning the study of the language requested. (4) The said act is not designed to subserve the interests of the public and citizens and residents of the state of Nebraska, but, on the contrary, is distinctly subversive of the public interest and destructive of the plans and organization of the public schools of Nebraska below the high school grades. (5) It is amendatory of section 6949, Rev. St. 1913, but is void because it fails to comply with the constitutional requirements relating to amendatory acts. (6) It creates an additional burden upon the entire property of the school district for the special benefit of a few of the pupils of the district classified arbitrarily, and does not provide for defraying the expense of such instruction, special as it is in its character, so as to relieve those not benefited and to whom the said act does not apply free from the burden of taxation necessary for the support of the same.

The respondents prayed that their amended answer should be deemed and held to be sufficient in fact and law, and that the motion and prayer of the relator for a peremptory writ of mandamus should be denied with costs.

The case was heard upon a demurrer of the relator to the answer, which was sustained, and the respondents elected to stand upon their answer. Judgment was rendered for the relator on the pleadings. It was ordered that a peremptory writ of mandamus issue against the respondents, the school district of Nebraska City, and the members of the school board of the said school district, commanding them to employ a competent teacher and to provide for the teaching in said Sixth street school, above the fourth grade, as an elective study, the German language. There was a motion for a new trial in which it was alleged that the court erred in sustaining the demurrer of the relator to the

answer and in finding the issues in favor of the relator, and in entering judgment in his favor, and in directing the issuance of a peremptory writ of mandamus to the respondents. This motion for a new trial was denied.

We are called upon to determine whether the answer of the respondents is sufficient or insufficient to set up a bar.

It would seem to be the general theory of the law concerning the establishment and maintenance of schools that they are in the hands of the people. What shall be done in the common schools in an educational way is to be determined at school meetings held in each school district, and also by the officers of each district as the statute may direct. The officers of each school district are charged with the obligation of carrying out the will of the people as it finds expression in the school meetings and in the legislature.

The respondents contend that because out of 64 signers of the petition parents or guardians of 49 did not elect to have their children take German, and that those of only 15 did so elect, therefore only those should be counted. The statute (Laws of 1913, ch. 31, Rev. St. 1913, sec. 6941) reads: "An act to provide for and to regulate the teaching of modern European languages as an elective course of study in the schools of the state of Nebraska.

"Be it enacted by the people of the state of Nebraska: Section 1. In every high school, city school or metropolitan school in this state the proper authorities of such school districts shall upon the written request, when made at least three months before the opening of the fall term of such school, by the parents or guardians of fifty pupils above the fourth grade then attending such school, employ competent teachers and provide for the teaching therein, above the fourth grade, as an elective course of study, of such modern European language as may be designated in such request: Provided, that not more than five hours each week and not less than one period each day shall be devoted to the teaching of any such modern European language in any elementary or grade school."

An examination of this section will show that the written request to be made by the parents or guardians of 50 pupils puts upon the parents no burden of stating that the children will study the language requested to be taught. The parents and guardians who desire a school of this kind have only to petition for it regardless of the studies which they intend their own children shall take. The desire to establish a school where more than one language is taught seems to justify the petition, and to put upon the board of education the duty of maintaining the school. It may readily be seen that some years there might be only a few pupils studying the foreign language, and other years there might be an increased number. Guardians or parents of 50 pupils are given the right under the statute of compelling the establishment of the school by presenting their petition for it. The statute is so plain that there appears no doubt about it. The meaning attempted to be attached to the statute by the respondents adds important provisions which the legislature could not have intended. No language is used which in any manner indicates the number of pupils intending to take the study. If it shall be said that only those who intend that their children shall study the language during the present school year can sign the petition, then the answer must be that the legislature said nothing about the conditions sought to be imposed. The contention made by the respondents has nothing in either the letter or the spirit of the act which sustains it. Of course, the only thing to be done is to ascertain the intent of the legislature. That may only be done by considering the words used and the purpose. *State v. City of Lincoln,* 68 Neb. 597.

In *People v. Weston,* 3 Neb. 312, it is held that the fundamental principle of statutory construction is ascertainment of the intent of the legislature. It was not for the school board to say whether it wanted German taught or not. It is required, when the requisite number petition that German should be taught, to make the necessary provision, no difference how many pupils are studying the lan-

guage. The number might start out with 5 and soon grow to 50. By the act of the legislature above quoted the board is required to provide for the teaching of that language. The act requires a petition signed by parents or guardians of 50 pupils. A class containing 50 children studying a foreign language might not be a convenient class as to numbers. It is clear that the legislature meant that the school board should not refuse to establish the class where parents or guardians of 50 pupils petitioned for it. A class of 15 or 20 pupils would probably be preferable to a class of 50, but the exact number is not material.

In *State v. Byrum*, 60 Neb. 384, it is said in the body of the opinion, and also in the syllabus, that, "in construing a statute, words should be given their usual meaning."

In *Siren v. State*, 78 Neb. 778, this court held that "the court will not read into a statute exceptions not made by the legislature."

In *State v. Bratton*, 90 Neb. 382, it was held that, "where a statute is clear and unambiguous in its terms, it is the duty of the court, in construing it, to give the language used by the legislature its plain and ordinary meaning."

The courts have no jurisdiction of matters committed to the legislature. *Cole v. Village of Culbertson*, 86 Neb. 160. It is not for the court to inquire into the motives of the legislature in the enactment of laws, or to determine their wisdom, or the lack of it. *Stewart v. Barton*, 91 Neb. 96.

The respondents object that it is contrary to public policy, as shown in sections 3-6, art. VIII of the Constitution; that instruction in modern languages is repugnant to the idea of a "common school." Every teacher probably knows that a little child can learn a language better than one who is more mature. Children talk to each other almost at once with the same naturalness that they play together, and the language in which they talk together is not very material, as they are able at once to understand. Of course,

the easy place to begin instruction in a foreign language is in the grades. The little ones are always ready to learn and are capable of doing so.

It is contended by the respondents in this case that "common schools" are common property; that they belong to the youth of any defined district. The idea is shadowed forth that the foreign-born resident is not entitled to education in his own tongue furnished at the public expense. To this it may be said that the education is not alone for him. It is for the native-born citizen as well as for the citizen of foreign birth. Both may profit by the study of a foreign tongue. Both do profit necessarily by the study of the foreign language along with the English language. The two languages will be considered and studied together, and the pupil, whether foreign-born or native-born, will profit by the fact that he studies both languages. In this case the only question is whether the legislature did what the statute says it did, and it is for the legislature to determine the policy of the enactment. It is not for the courts to attempt to infringe upon the power of the people as expressed through the legislature.

"A legislative act complete in itself is not inimical to the provisions of section 11, art. III of the Constitution; and where such an act is repugnant to, or in conflict with, a prior law, which is not referred to nor in express terms repealed by the later act, the earlier statute is repealed by implication." *State v. Hevelone,* 92 Neb. 748.

A statute complete in itself is not repugnant to the Constitution, though it may conflict with some other statute. *Nebraska Loan & Building Ass'n v. Perkins,* 61 Neb. 254; *Wenham v. State,* 65 Neb. 394; *Stewart v. Barton,* 91 Neb. 96.

We are unable to find any reason for setting aside the judgment of the district court, and it is therefore

AFFIRMED.

SEDGWICK, J., concurs in the conclusion.