WILLIAM MOSIMAN ET AL., APPELLANTS, V. DAN H. WEBER, APPELLEE.

FILED FEBRUARY 16, 1922.   No. 21774.

1. Schools and School Districts: ELECTION BOARD. At an election called for the consolidation of school districts, an election board appointed by the county superintendent with the consent and approval of the electors interested is at least a *de facto* board and its acts will be valid.

2. ———: JUDGES AND CLERKS OF ELECTION. The electors of a school district will not be disfranchised, in the absence of fraud, because the officer appointing the judges and clerks of election was not expressly authorized by law to make such appointments.

3. Elections: ILLEGAL VOTES. Illegal votes, to invalidate an election, must have been received and counted sufficient in number to change the result of such election; it is not enough to show that illegal votes were cast and counted by the election board.

4. ———: VALIDITY: INJUNCTION. Injunction is not the proper remedy to settle questions of the qualifications of election officers or whether legal votes have been rejected and illegal votes received sufficient to change the result of such election.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Kelligar, Ferneau & Gaynon,* for appellants.

.R. C. James and Dort & Cain, contra.

Heard before MORRISSEY, C. J., ROSE, ALDRICH and
FLANSBURG, JJ., BUTTON and COLBY, District Judges.

COLBY, District Judge.

This was an action brought in the district court for
Richardson county by appellants in behalf of themselves
and 72 other electors of a proposed consolidated school
district, who are similarly situated and interested in the
result of the action, as plaintiffs, against Dan H. Weber,
as county superintendent of the public schools of Richard-
son county, defendant, to prevent him from calling an
election of officers for said proposed consolidated district.
From the findings and decree, adverse to plaintiffs, ap-
peal is taken to this court.

Among other things, the amended petition, upon which
the action was heard, alleges that the plaintiffs are resi-
dent electors within the proposed consolidated and high
school district No. 6 of Richardson county, as redis-
tricted by the two school electors appointed by the
county board of said county, and who, with the defendant
as county superintendent of said county, constituted
a survey committee to redistrict said county into con-
solidated and high school districts; that said survey com-
mittee made a survey of the school districts of said county
and filed its report with the board of county commission-
ers; that for the purpose of said school district consolida-
tion said survey committee consolidated districts 54, 94
and 99, a portion of district 49 and a portion of district 53
into one proposed consolidated and high school district
No. 6, and located the schoolhouse for said proposd dis-
trict at the village of Preston, in said district; that
on the 10th day of March, 1920, a petition was filed signed
by 25 per cent. of the resident school electors of said
proposed consolidated district, asking the county school
superintendent to call an election in said proposed school
district for the purpose of adopting and consolidating the
same, and that on that day said county superintendent

prepared and caused to be posted a notice on the front doors of the schoolhouses in districts 54, 94, and 99, that an election for the purpose of consolidating said proposed district would be held at the schoolhouse in said school district 99 on March 31, 1920, at 1 o'clock p. m.; that no notice of said election was given to the school electors in districts 49 and 53, parts of which districts are sought to be consolidated with districts 54, 94, and 99, and for this reason and other reasons plaintiffs contend that said election is void.

Plaintiffs further charge in their petition that in violation of chapter 243, Laws 1919, M. C. McMahan, Charles Higenfeld, Ed Scheitel, William Zoeller, Jr., and William Mosiman unlawfully intruded themselves into the offices of judges and clerks of said election, listed the persons voting at said election, canvassed and made the returns of said election to the county clerk of said Richardson county, and that the duly elected, qualified and acting officers of district 99, where said election was held, were not permitted to conduct said election proceedings, and did not and were not permitted to list said voters, count the votes cast at said election, or canvass and return the result of said election to the county clerk, as is required by the provisions of the statute in such cases made and provided; that said five persons above named conducted said election, listed said voters, canvassed the result of said election, made return thereof to the county clerk, and excluded the regularly elected, qualified and acting officers of said school district 99 from their offices, and by such action rendered the proceedings of said election void and of no effect; that the result of said listing, voting, canvass and return of said election, as made by the said five persons named by the county superintendent constituting said election board, disclosed that there were 83 votes cast for and 78 votes cast against said consolidation.

Plaintiffs further allege in their petition that Fred Hahn and 14 others voted at said election, and their

votes were listed, canvassed and returned by said board
in favor of the consolidation of said school district, and
that each of them was an illegal voter at said election;
that these illegal votes constituted and went to make up
the apparent majority of 5 votes favoring said con-
solidation, although said 15 persons were not entitled to
vote at said election, for the reason that none of ·them
had any property assessed in his or her name within
said proposed consolidated district, and did not have
children of school age.

Plaintiffs further allege that on the return to the
county clerk of said election the county clerk can-
vassed said returns and made report thereof to the county
superintendent, as required by the provisions of the
statute, and that said county superintendent has de-
clared his intention to call an election in the proposed
consolidated school district No. 6, assuming said election
to have been valid, and will cause trustees to be elected
to take and have charge of the affairs of the proposed
new consolidated school district, unless restrained by
the court, and will immediately call such an election and
will install in office such newly elected trustees, who
will take over and conduct the affairs of said proposed
new consolidated school district No. 6.

The petition further alleges that the Great Nemaha
river traverses the said proposed school district from
east to west and the Big -Muddy passes from north to
south, thus separating the parts of said district, so
that during the wet and muddy seasons of the year
children living within' the limits of said district will
be unable to travel to school, or by reason of the con-
dition of the roads and highways be unable to be trans-
ported from their homes to said schoolhouse, and will
be deprived of their constitutional right to a free common
school education.

Plaintiffs further allege in their petition that said act,
chapter 243, Laws 1919, was enacted contrary to and
in violation of the provisions of section 11, art III of

the Constitution, in that it was not read at large on three different days in each house of the legislature; and that said act is in violation of said section 11 of the Constitution, in that the amendments thereto were not printed before the vote was taken on the final passage of said act; that the amendments to said act were not concurred in by the senate; and, further, that the title of said act does not clearly express the subjects of the act, in that the act makes provision for the annual appropriation of money under certain conditions to schools, and the title does not indicate such legislation and does not express such annual appropriation of money.

Petitioners pray that the county superintendent be enjoined from calling an election for the selection of trustees of the new proposed consolidated school district No. 6 or from taking any further steps to put into effect and operation said consolidated school district as proposed by said defendant.

The answer, after admitting certain formal parts, denies each and every allegation contained in the petition, and charges that the plaintiffs have an adequate remedy at law.

The district court, upon hearing, found generally in favor of the defendant; a motion for a new trial was made by plaintiffs and overruled, and a judgment of dismissal entered by the court.

Appellants urge a reversal of the judgment of the lower court upon four grounds, which will be considered in their order.

The first ground for reversal urged by counsel for appellants is that the election board was illegally appointed, had no power to conduct the election, and therefore the election was void.

Section 5 of the consolidated school act, chapter 243, Laws 1919, regarding the election and the board in charge thereof, reads, in part, as follows: "And the voting shall be under the direction and in charge of the board of trustees of the local school district within

which such election is being held."

It will be noted that each rural school district has but three trustees under the law, while an election board, as ordinarily constituted, requires three judges and two clerks. In the instant case it appears that one of the three members of the board of school trustees of district 99, where the election was being held, had resigned, and another was postmaster and unable to serve; thus leaving but one of the trustees of said district to conduct said election and act as a member of the election board. This act does not expressly give the county superintendent authority to appoint the election board, in case of vacancies or failure to qualify, but inasmuch as he is in charge of all the procedure under the act up to and including the election of trustees in the consolidated districts, and no other person seems to be authorized to appoint such board, it might properly follow that he was the person to make such appointments, and especially so in case of the failure of the school district trustees to function. It appears that he acted upon this assumption and made the necessary appointments to organize an election board of five members, and the evidence discloses that the election was conducted without opposition or question from any of the voters by these persons so appointed and acting as the de facto board; that the plaintiffs all voted at the election; and also that the plaintiffs Mosiman, Scheitel and McMahan were appointed, qualified by taking the official oaths, and acted as members of this election board and performed the very acts which they now seek to discredit and have declared void.

Now, this election board was either a de jure board, lawfully appointed by the county superintendent from the electors or from the members of the boards of said school districts so consolidated, or it was a de facto board, acting under color of appointment and by the consent and sanction of the electors of said proposed district. In either event, it would seem that the con-

clusion should be the same, so far as it affects the authority of the election board and the validity of the election. From an examination of the record, it plainly appears that the members of this board were not in any sense interlopers, but were appointed by the county superintendent, took their official oaths, and assumed and performed their official duties faithfully and, as they believed, lawfully, and with the consent and approval of the electors present at the polls, and that such board was vested with at least colorable official title and authority and could and did act as a *de facto* board.

In 9 R. C. L. 1012, sec. 32, citing *Hughes v. Roberts,* 142 Ky. 142, Ann. Cas. 1912D, 149, it is said: "The holding of an election by persons who were not officers *de jure,* but who had colorable authority and who acted *de facto* in good faith, was not so grave an irregularity as to void the election."

In *Trustees Common School District v. Garvey,* 80 Ky. 159, cited in the above reference, an appointee of a school commissioner acted as judge of election. The school commissioner had no appointive power, but the election was upheld upon the theory that the appointee was a *de facto* officer acting by the common consent of the persons interested in the election.

In cases collated in 1 A. L. R. 1536-1544, it is stated generally that "an election will not be vitiated because of an irregularity in the appointment of an election officer." And in *Gilleland v. Schuyler,* 9 Kan. 569, cited in notes in 1 A. L. R. 1537, the statement is made that the acts of such officers cannot be questioned collaterally, as the persons acting as election officers at this election were *de facto* officers.

In *Choisser v. York,* 71 N. E. 940 (211 Ill. 56), the court declares the doctrine thus: "Where, on the failure of the regularly appointed judges to appear at the election, other persons take their places without being prop-

erly selected, but after taking the oath of office as judges, they are at least judges *de facto.*"

· It is also held in *Fidelity Trust & Safety Vault Co. v. Mayor & City Council of Morganfield,* 96 Ky. 563, that where the statute provided that certain elections should be held under supervision of officers appointed by the county, in the absence of fraud, the mere fact that the election was held by officers appointed by the city would not invalidate the election.

In 15 Cyc. 311, 312, and cases cited, the following language is used: "There is nothing better settled than that the acts of election officers *de facto* who are in under color of election or appointment are as valid as to third parties and the public as those of officers *de jure.* The doctrine that electors may be disfranchised because one or more of the judges or inspectors of election did not possess all the qualifications required by law finds no support in the decisions of any judicial tribunal."

It is clearly and conclusively disclosed by the record that there was no objection raised by the plaintiffs or any one else to the appointment and election of these officers, but that they acted as an election board with the sanction and approval of all persons interested. This situation is covered by the decision in *Collins v. Masden,* 74 S. W. 720 (25 Ky. Law Rep. 81), where it is said: "Where, on an election to change a common school district to a graded school district, the person appointed as clerk failed to act, on valid excuse, a person selected by the judge, with the consent of the voters present, to act in his stead was properly appointed clerk."

And in 20 C. J. 90, sec. 70, and citations, the following language is used: "The election returns should not be rejected for any irregularity in the appointment of the officers of election where it does not appear that the irregularity affected the result of the election."

An examination of the record in this case does not disclose any misconduct of the election officers or others or any disadvantage accruing to any person interested

by virtue of the conduct of such officers. There is no claim or charge of fraud as to any act by the officers *de facto* occurring at the polls or prior or subsequent to the election. The record discloses that the election was conducted without opposition or question by a board having colorable title and acting *de facto;* that, as before stated, all the plaintiffs named voted at the election, and that three of the plaintiffs, Mosiman, Scheitel, and McMahan, acted as members of such election board. The well-known principles of the general doctrine of estoppel would seem to apply with great force in this case. In any event, the election conducted by said board was not only not void, but under the facts the result of such election is binding in law.

The second ground urged for the reversal of the judgment of the lower court by counsel for appellants is that the consolidated school act, chapter 243, Laws 1919, is unconstitutional as depriving children of school privileges. In support of this contention appellants have attempted to show that it is impossible for young school children to attend under the conditions prescribed in the law because of the distance from the school and the hardships attendant upon the conditions of storm and weather, impassable roads, and otherwise, in the consolidation or division of the districts; that in wet and muddy seasons of the year, especially during the months of January, February, and March, the children living within the limits of said district will be unable either to travel in said district to school or because of the condition of the highways be unable to be transported from their homes to said schoolhouse.

It does not seem that the act should be construed to be unconstitutional for these reasons. The board of education is given express powers to provide for the transportation of rural pupils, and it must be assumed that such board will provide suitable transportation and will adopt reasonable rules and regulations in that behalf. The act would not be unconstitutional because considerable

trouble and hardship in furnishing transportation may be found. The kind of transportation, its sufficiency and convenience have properly been left to the reasonable discretion of the board of education.

The third ground urged for the reversal of the judgment of the lower court is that the law or act providing for the consolidation of school districts was not legally enacted. This contention is settled by the decision of this court in case of *State v. Cox,* 105 Neb. 75, which decision would also seem to completely dispose of the argument for reversal urged under the second ground.

The fourth ground urged by counsel for appellants for the reversal of the judgment of the lower court is that a sufficient number of illegal votes were cast at the election for the consolidation of the school districts to change the result. An examination of the record discloses the fact that there were not exceeding ten illegal votes cast at the election. However, there is no evidence whatever that any of these illegal votes were cast for the consolidation. It appears from the evidence that illegal votes were cast against the consolidation, but there is no witness who testified that any of the illegal votes cast were in favor of the consolidation of the school districts. Subdivision 5, sec. 2095, Rev. St. 1913, makes a contest available only "when illegal votes have been received or legal votes rejected at the polls sufficient to change the result." This plain language of the statute, when applied to the facts, would seem to settle the question of illegal voting and also dispose of the last ground for reversal relied upon or contended for in appellants' brief and argument.

It occurs to the writer of this opinion that the appellants had an adequate remedy at law, both for contesting the illegality of the election by reason of illegal votes and also for changing or reforming the boundaries of the proposed consolidated district, the former remedy being given under chapter 20, art. X, Rev. St. 1913, and the latter remedy being given by the act in question itself,

chapter 243, Laws 1919, which provides that, after filing of the report of the committee for the establishment of said district with the county board, 25 per cent. of the school electors may, within 40 days, file a written protest or appeal with the state superintendent of public instruction against the establishment of the boundaries and schoolhouse sites as fixed by the county committee, and that the state superintendent, on showing, may approve the boundaries established by the county committee or order a rearrangement thereof, as in his judgment may seem best. Injunction hardly seems to be the appropriate remedy to settle questions regarding the qualifications of election officers, whether *de jure* or *de facto*, or the question of whether a proposition submitted to the voters has been carried or not, or whether illegal votes have been received or legal votes rejected at such an elction sufficient to change the result.

The several grounds relied upon by appellants for the reversal of the judgment of the lower court are not sustained by this court.

The findings and judgment of the district court appear to have been based on the facts contained in the record, and are justified by the established principles of law, and are

AFFIRMED.