ROBERT CUNNINGHAM ET AL., APPELLANTS, V. HERMAN ILG ET AL., APPELLEES.

FILED JULY 2, 1929. No. 26580.

*Coufal & Shaw*, for appellants.

*F. H. Mizera* and *August Wagner*, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOSS, C. J.

Plaintiffs appealed from a final decree of the district court denying them an injunction against the defendants to prevent a change of a schoolhouse site in a rural district.

The plaintiffs were electors qualified to vote in rural school district number 55 in Butler county. The defendants were members of the school board of the district. The controversy arose out of the proceedings at the annual meeting of the school district June 13, 1927, on a vote to change the school site to another location in the district. There were 38 individuals present, 24 voted to change the site, 11 voted against it and 3 did not vote on this proposition.

Under section 6275, Comp. St. 1922, at any annual meeting the "qualified voters in the school district" may effect a change of site when designated "by a vote of two-thirds of those present," with the proviso that where the schoolhouse

is located three-fourths of a mile or more from the center of the district it may be changed to a point nearer the center of the district "by a majority vote of those present." Plaintiffs made *prima facie* proof that the proposed change was less than three-fourths of a mile. Nothing in the evidence or arguments seriously challenges this proof. So the change of site involved here required a two-thirds vote rather than a majority vote.

The three individuals present at the meeting who did not vote were John M. Stoupa, his wife, Mary Stoupa, and Jerry Kubik. The evidence shows that Mr. Stoupa owned land in the school district where he and his wife resided with their children of school age; but that, on his application, a transfer had been granted and was in force admitting his children to attend school in an adjoining district. Under section 6524, Comp. St. 1922, as amended by chapter 176, Laws 1925 (and, effective after the election under consideration, by chapter 81, Laws 1927), there had been carried, unchanged, in the original section and in the amendments, a provision that "the parents or guardians of the pupils so transferred shall have the right to vote in the district to which such pupils are transferred on all school matters except that of issuing bonds." Under this provision the Stoupas were not entitled to vote on this question of change of schoolhouse site in their home district and the district court properly excluded them from consideration as voters present and entitled to vote. See, also, *State v. Matson*, 97 Neb. 746.

The district court found as a fact that Jerry Kubik was physically present at the election and was qualified to vote, but held as a matter of law that he was not "present" within the contemplation of section 6275, because he did not offer to vote and was not prevented from voting. The record of the school meeting shows that prior to voting on any propositions they adopted a set of rules to govern the election. One of these rules required each qualified elector desiring to vote at the election to secure a ballot from one of the judges. After marking and folding it he was to return

it and have it deposited forthwith in the closed receptacle. Kubik did not obtain a ballot and did not vote either way on the proposition. Appellees argue that, as Kubik did not appear and obtain a ballot and did not vote, to hold that he was present is to allow extraneous evidence to supersede the record of the meeting. The record of the meeting, kept and certified by the director, states that it "clearly and completely reflects the action of such meeting and contains all of the motions, resolutions, proceedings and acts of said meeting." Nowhere in the record made at the meeting does it appear that Kubik was present and they strenuously urge that such record should be controlling. It was proved on the trial that he was at the meeting during all of the proceedings on the matter of change of site and was in fact qualified to vote thereon. That finding of fact by the trial court was correct. We are bound by the statute rather than by the records of the school meeting in a determination of the question as a matter of law whether he was "present." It was decided by the court that he was not "present" as contemplated by the language of the statute.

The general meaning of the adjective "present," as supplied by the definition in the dictionary, may be said to be given as "being in a certain place and not elsewhere; opposed to absent." There do not appear to be many judicial definitions of the word in cases similar to the one under consideration.

*McLain v. Maricle,* 60 Neb. 353, involved the change of a schoolhouse site to a point nearer the geographical center of the district. There it was "held, that of those present at such meeting at least a majority thereof must cast their votes in favor of the proposition to legally adopt it." In the opinion, after quoting the statute, it was said: "This, we think, is capable of but one construction, and that is, of those present entitled to vote upon the question, at least a majority thereof must cast their votes in favor of the proposition."

In *State v. Vanosdal,* 131 Ind. 388, three out of the six township trustees refused to vote on the election of a county

superintendent. They were present, refused to vote and merely stepped aside among the bystanders in the same room. The court held that "they must be treated as present and failing or refusing to vote."

An act provided for an election of a county superintendent "by a majority of the whole number of directors present." At a county convention for purposes of electing a superintendent, 112 directors were present, 56 voted for relator, 55 voted for another and one member refused to vote. The court held that the director who was present and refused to vote should have been counted, that "the legal intendment was that he voted for neither or for the minority candidate," and that a commission could not issue to relator. *Commonwealth v. Wickersham*, 66 Pa. St. 134.

Appellees cite *Smith v. Proctor*, 130 N. Y. 319, which they think controlling. It holds that a majority of those who vote, though less than a majority of those actually present at the meeting, is sufficient. But the New York statute is different from ours in that it provides that said majority is "to be ascertained by taking and recording the ayes and noes."

The fact that the meeting adopted rules requiring those desiring to vote to secure ballots and to vote, and thus excluded Kubik from the count of those present because he did not follow the rule, cannot control. However desirable the rules might be in making a record of the school election, they cannot supersede the plain words of the statute. Kubik was present and must be so counted.

The vote of Mary Dolezal, who voted with the majority, is challenged. She had no children and no property. Section 6271, Comp. St. 1922, prescribing the qualifications of school district electors, is as follows:

"Every citizen of the United States, male or female, who has resided in the district forty days and is twenty-one years old and who owns real property or personal property that was assessed in the district in his or her name at the last annual assessment, or who has children of school age residing in the district, shall be entitled to

vote at any district meeting or school election held in any district, village or city."

If the plain terms of this section are controlling, then she had no right to vote and was not present in contemplation of law. But appellees, and the trial court, concluded that she was eligible to vote on the question under the general election laws. A section thereof, after its amendments in 1917 and in 1921, reads as follows:

"Every person of the age of twenty-one years or upwards shall be an elector, and shall have the right to vote for all officers to be elected to public office, and upon all questions and propositions submitted to the voters, at any and all elections, authorized or provided for by the Constitution or laws of Nebraska.

"No person shall be qualified to vote at any election unless such person shall have resided in the state six months, in the county forty days and in the precinct, township, or ward ten days, and shall be a citizen of the United States." Comp. St. 1922, sec. 1893.

The decree of the district court on this point said:

"That as a matter of law section 1893, as amended in 1917 and 1921, is to be construed in connection with section 6271 (1922 Statutes) so that following said amendments every citizen, over 21, having resided in the state for 6 months and in the district for 40 days is an elector, qualified to vote at a school meeting upon all questions, except the election of district officers, although such citizen may not own real property or personal property that was assessed in the district in his or her name and may not have children of school age."

One qualification for voters at school meetings and another for voters at general elections has been consistently prescribed by the legislatures of this state. In 1884 it was held that the act allowing women possessing the prescribed qualifications to vote at school meetings and to hold office as school trustees was not in conflict with the Constitution and was valid. State v. Cones, 15 Neb. 444. When in 1917 the general election law was amended (section 1893,

above quoted) so as to apply to all elections, it did not expressly amend or repeal any part of the school laws. It did, however, leave in force preexisting section 1898 (of the same chapter) Comp. St. 1922, as follows:

"Elections for school district officers, except for members of the boards of education in cities, are excepted from the provisions of this chapter."

From this it is argued, under the rule that the mention of one thing excludes another, that at rural school meetings the qualifications of electors set forth in the laws relating to schools control as to election of school district officers, but that on all other matters to be voted in such school meetings the qualifications described in the general statutes control. But this canon of statutory construction is not of universal application.

"It is a cardinal rule of construction that an act whose provisions are general will not, unless unavoidable, be so interpreted as to affect more particular and positive provisions of a prior act on the same subject." *Dawson County v. Clark*, 58 Neb. 756.

The school laws, prior to and at all times since the amendment of the general election law in 1917, defined the qualifications of a school elector for all purposes, and provided that such person should "be entitled to vote at any school meeting." Moreover, the general election law requires that an elector under its terms must be a resident for a specified time in "the precinct, township, or ward," but does not mention residence in a school district. Such omission indicates that it was the legislative purpose to deal by section 1893 only with general elections, and not to amend or supplement the school laws.

It must also be noted that section 6272 requires a person whose vote at a district meeting is challenged to make oath that he owns property assessed in his name, or has children of school age, and the following section provides that the vote of any person who refuses to take such oath shall be rejected. Compliance with these sections, which are unrepealed, would deny, under section 1893, the vote

to a general elector not possessing such special qualifications.

Ample considerations of public policy have dictated that school district affairs should be under the control of those persons only who have a property or parental interest in its management. For similar reasons special qualifications have been fixed for electors in irrigation districts, requiring ownership of land affected, and in drainage districts, allowing one vote for each acre owned, to the end that only those vitally interested should have voice in the government of such districts. Did the legislature intend, by a broad amendment purporting to apply to all elections, to confer the management of such district affairs upon all general voters who happened to live within the territory of the district, irrespective of their actual interest? In the absence of a clear expression of that intention, we cannot declare that a new scheme of such far-reaching effect was adopted. Finally, some weight should be given to the thought that, under the view of the lower court, only those who have property or children of school age could vote in the selection of school officers, but, on the more important questions of taxation, bond issues, or schoolhouse sites, another body of voters, without property or parental interest, could step in and perhaps control results. Such a dual body of electors would tend to defeat the orderly conduct of the business of the district.

Our conclusion being that the general election law was not intended to prescribe qualifications for school district electors, it follows that Mary Dolezal was not a voter.

Considerable discussion has been had of the eligibility of three young men to vote at the school election. They were allowed to vote. They voted for the change of site. It is contended that their ownership of taxable personal property was not in good faith, was merely colorable, and that it was transferred to them only to qualify them to vote at the school election. It was held in *Starkey v. Palm*, 80 Neb. 393, to be a question of good faith. We do

not find it necessary to take the time and space to discuss the effect of the evidence as to these three and to decide whether or not they were qualified electors. Even if their votes were counted, as they were by the trial judge, it would not change the result of our decision.

Assuming that the three young men were qualified and that Mary Dolezal, who voted for the change of site, was disqualified, as we have shown she was, it follows that there were 23 votes that may be considered as favoring the change of site. In addition to the 11 shown by the record to have voted against removal Kubik must be counted as present. There were therefore 35 qualified electors present. Twenty-three being less than two-thirds of 35, it follows that the vote was insufficient to effect the change of site and the injunction should have been granted.

The judgment of the district court is reversed, with directions to enter a permanent order of injunction.

REVERSED.

Note—See Schools and School Districts, 35 Cyc. 875 n. 53, 938 n. 40; 21 L. R. A. 662; 27 L. R. A. n. s. 552; L. R. A. 1915B, 247; 9 R. C. L. 1030.