RAYMOND FARRELL ET AL., APPELLEES, v. SCHOOL DISTRICT No. 54, LINCOLN COUNTY, NEBRASKA, ET AL., APPELLANTS.

84 N. W. 2d 126

Filed June 28, 1957. No. 34165.

*Maupin, Dent, Kay & Satterfield* and *William E. Morrow, Jr.*, for appellants.

*Baskins & Baskins*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in equity brought by Raymond Farrell, Hans L. Johnson, Jr., Z. A. Russell, C. O. Shadonix, and Frank Kramer, legal voters and taxpayers of school district No. 54, Lincoln County, Nebraska, plaintiffs and appellees, against School District No. 54, Lincoln County, Nebraska, School Board of school district No. 54, Lincoln County, Nebraska, Archie Konruff, president of the school board of school district No. 54, and Lloyd Lovitt, secretary of the school board of school district No. 54, defendants and appellants, to enjoin the defendants from performing or carrying out a contract with school district No. 2, Logan County, Nebraska, for the instruction of school children of school district No. 54.

It is agreed by the parties that school district No. 54 and school district No. 2 are Class II schools. We will not repeat that school district No. 54 is in Lincoln County, Nebraska, and school district No. 2 is in Logan County, Nebraska, but refer to such school districts as school district No. 54 and school district No. 2.

The trial court entered judgment to the effect that each of the said defendants should be permanently enjoined from expending any money of school district No. 54 under and by virtue of the terms and conditions of said contract, from causing the pupils of school district No. 54 to be instructed in school district No. 2 for the 1956-1957 school year for the period of one year, and from in any other manner performing any of the terms and conditions of said contract.

The defendants filed a motion for new trial which was overruled. From the overruling of the motion for new trial, the defendants appealed.

The facts are stipulated and agreed to as set forth in the appellants' brief, and are as follows: On June 11, 1956, at 2 p.m., the annual meeting of the legal voters of school district No. 54 was held in the schoolhouse of school district No. 54, and at that time there was submitted to the legal voters of school district No. 54 for their determination the following proposition: "Should the School Board of School District No. 54, Lincoln County, Nebraska, contract with the School Board of School District No. 2, Logan County, Nebraska, for the instruction of pupils residing in School District No. 54, for the 1956-1957 school year, for the period of one year?" The vote upon said proposition by the legal voters of school district No. 54 was by ballot and resulted in a tally of 15 in favor of said proposition and 12 against said proposition. Since there was a majority in favor of the proposition, Archie Konruff, the president of the school board of school district No. 54, and Lloyd Lovitt, secretary of the school board of school district No. 54, in their official capacities as such officers, immediately executed a contract with the school board of school district No. 2 for the instruction of the pupils of school district No. 54.

It was stipulated for purposes of the trial of the action that Raymond Farrell, Mary E. Farrell, C. O. Shadonix, Twyla Shadonix, Catherine Shadonix, Hans L. Johnson, Jr., Maudie Johnson, Z. A. Russell, Emma Russell, Alfred Russell, Frank Kramer, and Robert Kramer were legal voters of school district No. 54, were present at the school meeting of school district No. 54, and voted against said proposition. It was further stipulated that Joseph P. Dolan, Kathryn Dolan, Harry W. Frey, Mildred M. Frey, Alice Hutchens, Charles A. Hutchens, Lloyd Lovitt, and Maxine Lovitt were also present and voted upon said proposition.

Prior to the holding of the annual meeting of the legal voters of school district No. 54, the Dolan, Frey, Hutchens, and Lovitt families had either requested continuances of their transfers or had made original requests for transfers from school district No. 54 to school district No. 2, as follows: Joseph P. Dolan made original request for transfer from school district No. 54 to school district No. 2 on June 19, 1954, then was granted a continuance of his transfer for the 1955-1956 school year, and on May 4, 1956, again requested and was granted a continuance of his transfer for the 1956-1957 school year. Harry W. Frey made original request for transfer from school district No. 54 to school district No. 2 on May 12, 1953, then was granted continuance of his transfer for the school years 1954-1955 and 1955-1956, and on May 22, 1956, again requested and was granted a continuance of his transfer for the 1956-1957 school year. Mrs. Charles A. Hutchens made an original request for transfer from school district No. 54 to school district No. 2 on May 31, 1956, which request was granted. Lloyd Lovitt made an original request for transfer from school district No. 54 to school district No. 2 on May 22, 1956, which request was likewise granted.

Subsequent to the time Joseph P. Dolan, Harry W. Frey, Mrs. Charles A. Hutchens, and Lloyd Lovitt made their respective requests for either continuances of transfer or original requests for transfers and on June 8, 1956, the four named individuals caused to be filed in the office of the county superintendent of Lincoln County, Nebraska, and in the office of the county superintendent of Logan County, Nebraska, a notice requesting that their individual temporary transfers from school district No. 54 to school district No. 2 for the 1956-1957 school year be canceled and such a cancellation be made effective immediately.

The appellants' assignments of error may be stated as follows: (1) The trial court erred in failing to hold that Joseph P. Dolan, Kathryn Dolan, Harry W. Frey,

and Mildred M. Frey were legal voters of school district No. 54 on June 11, 1956, and entitled to vote upon the proposition of the school board of school district No. 54 contracting with the school board of school district No. 2 for the instruction of the school children of school district No. 54 for the 1956-1957 school year; (2) the trial court erred in failing to find that the vote on said proposition was 15 in favor and 12 against the proposition; and (3) the trial court erred in failing to find that the plaintiffs had an adequate remedy at law under the provisions of Chapter 32, article 10, R. R. S. 1943.

The appellants assert and contend that the Dolans and Freys possessed a right guaranteed by the Constitution and statutes of this state to vote at the annual school meeting in the district of their residence on the proposition above mentioned. In support of this contention, the appellants cite Article I, section 22, of the Constitution of the State of Nebraska, as follows: "All elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise."

Article VII, section 6, of this state's Constitution provides: "The legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." This provision of the Constitution leaves all matters pertaining to schools and school districts, their creation, dissolution, government, and control with the Legislature. In all such matters the state is supreme. See, Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566; School District No. 49 v. School District No. 65-R, 159 Neb. 262, 66 N. W. 2d 561. The Legislature is authorized to and has established different qualifications for voters in a school district election than those for voters voting in a general election. The appellants concede this to be true. See, Cunningham v. Ilg, 118 Neb. 682, 226 N. W. 333; State ex rel. Crosby

v. Cones, 15 Neb. 444, 19 N. W. 682. We find no merit to the appellants' contention.

The appellants contend that a request for a continuance of transfer under the provisions of section 79-482, R. R. S. 1943, is subject to cancellation and revocation by the parent requesting the transfer; that the trial court found the Dolans and Freys did not have a right to cancel and revoke their respective requests for transfers from school district No. 54 to school district No. 2 and as a consequence they were not legal voters of school district No. 54 on June 11, 1956, when the election was held at the annual meeting of school district No. 54; and that as a result of the trial court's holding, the vote was changed showing 11 votes for the proposition heretofore set out and 12 votes against it. The appellants' contention is that the Dolans and Freys had the legal right to revoke and cancel their respective requests for transfers, and the trial court erred in finding that they did not possess such rights. The following sections of the statute are pertinent to a determination of the appellants' contention.

Section 79-481, R. R. S. 1943, provides: "When the transfer of children from a school district located in one county to a school district located in another county is involved, the county superintendent of each such county shall notify the county clerk, of the county in which the county superintendent has jurisdiction, of each transfer granted, using such forms of notice as the Superintendent of Public Instruction shall prescribe. The county clerk of the county to which the transfer for school purposes is made shall certify to the county clerk of the county in which the applicant for such transfer resides the number of mills of school taxes then voted in the district to which the transfer is made. It shall then be the duty of the county clerk of the county in which the applicant resides to levy, within fifteen days after the receipt of the certificate of transfer, unless it be recalled at the request of the parent or guardian of

such children in the meantime, under the authority of the county board of said county, upon all taxable property belonging to such applicant, real or personal, situated on lands thus transferred, an amount equal to and not exceeding the number of mills of school taxes being voted in the district to which the transfer is made. All such tax money derived from such levy shall be collected by the county treasurer of the county in which the property to be taxed is located and shall be paid by him to the county treasurer of the county to which transfer has been made. A proper receipt for such taxes shall be executed and drawn to the favor of the county treasurer from whom such taxes are received. The receipt shall set forth the purposes of such taxes and shall designate the school district entitled to receive all such taxes. The county treasurer of the county to which transfer was made shall place such taxes to the credit of the district."

It will be noted that section 79-481, R. R. S. 1943, provides for the procedure to be followed at the time the original request for transfer is made. It does not provide the procedure for a renewal of a transfer. This section authorizes the parents and guardians to recall a request for an original transfer within 15 days after the county clerk has received the certificate of transfer. At that time the county clerk has made no change in his official records, and makes no change therein until the expiration of 15 days from the date of receipt of the transfer. Once the county clerk changes his records to reflect the transfer, the records remain the same until he is notified that the transfer ceases to exist.

Section 79-482, R. R. S. 1943, provides: "When such transfer shall have been made the children shall enjoy school privileges in the adjoining district for only one year, unless the parent or guardian of such children shall give notice in writing to the county superintendent not less than fifteen days before each annual meeting or election, asking that the transfer be continued for one

year, using such form of notice as the Superintendent of Public Instruction shall prescribe. The notice shall state that such parent or guardian has children of school age who have not yet completed the eighth grade. A continuation of the transfer shall be granted only with the approval of the school board of the district to which such children are transferred. When the transfer shall cease to exist, the county superintendent shall notify the county clerk who shall thereupon retransfer, and the taxes of the parent or guardian and the real estate shall again be placed in the district of their residence."

It will be observed that section 79-482, R. R. S. 1943, does not provide for a recall or revocation of a renewal of a transfer. It is apparent that the legislative intent was that there should be no recall or revocation of a renewal of a transfer. This section contains the language: "When the transfer shall cease to exist," it is then the duty of the county superintendent to notify the county clerk who then is to change the records accordingly. As we read the above section of the statute, a transfer once granted ceases to exist unless a renewal is made as required by said section. Once renewed, the transfer is in existence for a period of one year and may not in the interim be recalled, revoked, or canceled.

The procedure for a recall of an original transfer, as provided in section 79-481, R. R. S. 1943, cannot apply so as to provide for a recall of a renewal of a transfer as provided for in section 79-482, R. R. S. 1943. Section 79-482, R. R. S. 1943, makes no requirement for a certificate of renewal of a transfer to be given to the county clerk. It makes no provision for the county clerk changing his records, except when notified that the transfer ceases to exist. The acts required to be done by the county superintendent and the county clerk, which determine the time limit within which a recall of an original transfer may be made (section 79-481, R. R. S. 1943), are not required to be done upon a renewal of a transfer (section 79-482, R. R. S. 1943). Thus the procedure

contained in section 79-481, R. R. S. 1943, for recall of an original transfer cannot be applied so as to recall a renewal of a transfer made under section 79-482, R. R. S. 1943. The provisions contained in section 79-481, R. R. S. 1943, deal with original transfers to adjoining school districts to which pupils are transferred. Section 79-482, R. R. S. 1943, deals with renewals of such transfers. It is obvious that the provisions of the respective sections cannot be incorporated so that each section is included within the purview of the other.

The fundamental principle of statutory construction is ascertainment of the intent of the legislature. The court will not read into a statute exceptions not made by the legislature. Where a statute is clear and unambiguous in its terms, it is the duty of the court, in construing it, to give the language used by the legislature its plain and ordinary meaning. See State ex rel. Thayer v. School District, 99 Neb. 338, 156 N. W. 641.

We conclude that the appellants' contention above stated cannot be sustained.

With reference to the right to contract, as set forth in the proposition voted upon at the annual meeting of school district No. 54, section 79-486, R. S. Supp., 1955, is pertinent. It provides in part: "The governing board of any public school district in this state, when authorized by a majority of the votes cast at any annual or special meeting, is empowered to (a) contract with the district board of any neighboring public school district or districts for the instruction of pupils residing in the first-named district in the school or schools maintained by the neighboring district or districts for a period of time not to exceed three years, and (b) make provision for the transportation of such pupils to the school or schools of the neighboring district or districts."

By the language of section 79-486, R. S. Supp., 1955, before a school board is authorized to enter into such a contract a majority of the votes cast at the annual or special meeting of the school board must be shown to

favor the proposition. This is a condition precedent. In the event a contract is entered into without compliance with this section of the statute, such contract is null and void.

School boards of Class II districts are creatures of statute with power to bind the district only within the limits fixed by the Legislature. A Class II school district is a creature of statute possessing no powers to contract beyond those granted by the Legislature. In case a Class II school district enters into a contract without the power granted by the Legislature such contract may be declared void and invalidated in an appropriate action. See Fulk v. School District, 155 Neb. 630, 53 N. W. 2d 56.

With reference to the right of parents to vote as applied to the instant case, section 79-483, R. R. S. 1943, is pertinent. This section provides: "The parents or guardians of the pupils so transferred shall have the right to vote in the district to which such pupils are transferred on all school matters except those of issuing bonds, levying a tax for building purposes, contracting for instruction, and closing the district. No parent or guardian of the pupils so transferred shall be eligible to hold office on the school board of the district to which the transfer was made."

In Cunningham v. Ilg, *supra*, this court construed section 6524, Comp. St. 1922, as amended by the Laws of 1925, c. 176, § 1, p. 459, which provided in part: "* * * the parents or guardians of the pupils so transferred shall have the right to vote in the district to which such pupils are transferred on all school matters except that of issuing bonds." It was held that by virtue of this section, parents and guardians of pupils who had been transferred to an adjoining school district were not, while such transfers were in force, legal voters of their home school district. Consequently, they were not entitled to vote on school matters in their home school district.

The history of this legislation contained in Cunningham v. Ilg, *supra*, decided July 2, 1929, shows that this section was reenacted by the Legislature. See, Laws 1927, c. 81, § 1, p. 246; Laws 1929, c. 91, § 1, p. 345; Laws 1931, c. 147, § 1, p. 401; Laws 1941, c. 162, § 1, p. 647; Laws 1941, c. 167, § 1, p. 663; Laws 1943, c. 194, § 1, p. 649; Laws 1949, c. 256, § 121, p. 733.

In Johnson v. Weborg, 142 Neb. 516, 7 N. W. 2d 65, it was held: "When the legislature reenacts a law, it thereby adopts the judicial construction which has theretofore been placed upon it. The legislature is presumed to have known the effect which such statute originally had, and by its reenactment to have intended that that same effect should again be had." See, also, Shandy v. City of Omaha, 127 Neb. 406, 255 N. W. 477.

The conclusion must be drawn, in the light of the above authorities, that the Legislature intended, relative to section 79-483, R. R. S. 1943, that parents or guardians of children transferred to a school district in an adjoining county, such as in the case at bar, while such transfers are in effect are not entitled to vote and are not considered legal voters in their home school district.

The appellants contend that the appellees had an adequate remedy at law by utilizing the law governing election contests; and that the appellees are not entitled to the relief granted them by the trial court in an injunction action.

Chapter 32, article 10, R. R. S. 1943, deals with elections and sets forth the general provisions with reference thereto. Section 32-1001, R. R. S. 1943, provides in part: "The provisions of sections 32-1001 to 32-1036 shall apply to contests on account of a general election. The election of any person to any public office, the location or relocation of a county seat, or any proposition submitted to a vote of the people may be contested: * * *." The different grounds for contest are then set forth in said section.

The appellants cite Scott v. McGuire, 15 Neb. 303, 18

N. W. 93. This case involves a relocation of a county seat. It was held that an injunction action would not lie. This type of election contest is specifically provided for in section 32-1001, R. R. S. 1943.

The appellants cite Mosiman v. Weber, 107 Neb. 737, 187 N. W. 109, wherein the court held: "Injunction is not the proper remedy to settle questions of the qualifications of election officers or whether legal votes have been rejected and illegal votes received sufficient to change the result of such election."

The appellants assert that the principle laid down in the cases cited above was reaffirmed in the case of School District No. 49 v. School District No. 65-R, *supra.* This was an injunction proceeding. The case involved an attack upon the legality of the formation of school district No. 65-R. The plaintiff, school district No. 49, sought to prevent school district No. 65-R from being put into operation insofar as it affected school district No. 49. Part of the proceedings was the submission of the question of reorganization to the electors of the school districts whose boundaries were in any manner changed by the plan of reorganization. Section 79-426.15, R. S. Supp., 1951, which provided for this election, designated it a special election and placed it in charge of the election officials charged with duties of holding general elections. The court held: "The statute has provided an adequate remedy for the settlement of the rights of parties in election cases by either contest or quo warranto and these remedies are exclusive."

The cases of Mosiman v. Weber, *supra,* and School District No. 49 v. School District No. 65-R, *supra,* are distinguishable from the case at bar. At the time the case of Mosiman v. Weber, *supra,* was decided by this court, on February 16, 1922, there was no statute in effect comparable to section 32-106, R. R. S. 1943, which provides: "Election shall mean any primary, special, municipal, or general election, except school election, at which the electors of the state or of any subdivision

thereof choose by ballot public officials or decide any public questions and propositions lawfully submitted to them." The source of this section is Laws 1951, c. 99, § 6, p. 271. It will be noted that the above-mentioned section of the statute excludes school district elections and voting from the definition of elections. There was in effect at the time Mosiman v. Weber, *supra,* was decided, a statute comparable to section 32-901, R. R. S. 1943, which provides as follows: "Election of members of governing body of school districts are excepted from the provisions of this chapter relating to the manner of voting and conduct of elections, except as otherwise provided in Chapter 79." Chapter 79 is titled "Schools." The comparable statute in effect at the time Mosiman v. Weber, *supra,* was decided was section 1946, Rev. St. 1913, which provided: "Elections for school district officers, except for members of the boards of education in cities, are excepted from the provisions of this chapter." The chapter referred to is Chapter 20, Elections, Rev. St. 1913. So, at the time of the decision in Mosiman v. Weber, *supra,* there was in effect no clear mandate of the Legislature excluding voting in school districts from the operation of the general election laws.

With reference to School District No. 49 v. School District No. 65-R, *supra,* it will be observed that the election, by legislative mandate in that case, was not a school election, but was subject to the general election laws and, of course, to an election contest.

Section 32-1001, R. R. S. 1943, must be read in conformity with sections 32-106 and 32-901, R. R. S. 1943.

We believe the following to be in point with the case at bar.

In Johnson v. Du Bois, 208 Minn. 557, 294 N. W. 839, an election contest, contestant, contestee, and one Berggreen were candidates for director of the board of education of the school district of Sauk Centre at the annual meeting and election held pursuant to law at which two directors were to be elected. The question for de-

cision was whether the district court had jurisdiction of a contest of a school district election. The court said: "The authority of courts to entertain election contests is purely statutory. Absent statutory authorization, the courts are without jurisdiction to hear and determine election contests. State ex rel. Narveson v. Village of McIntosh, 95 Minn. 243, 245, 103 N. W. 1017. If the statute did not authorize the court to entertain a school district election contest, it had no jurisdiction to hear the contest. * * * 'Sec. 2. (referring to the election laws) The word "election", as used in this act, shall mean and include any election, *except those held in any school district,* at which the electors of the state or of any subdivision thereof nominate or choose by ballot public officials or decide any public question lawfully submitted to them.' (Italics supplied.) * * * By defining an 'election' to mean and include any election 'except those held in any school district,' school district elections were entirely excluded from the provisions of the act. The exception extends to all provisions thereof, including those relating to election contests. The subjects embraced in an exception clause are exempt from the operation of the statute. State, by Ervin, v. Goodman, 206 Minn. 203, 208, 288 N. W. 157."

The appellees in the instant case had no cause of action by way of election contest. An election that can be contested by virtue of section 32-1001, R. R. S. 1943, does not include the voting by the legal voters of a school district, at an annual meeting, upon the proposition of contracting for instruction of pupils.

In this connection, it is stipulated and agreed that the appellees are residents and taxpayers of school district No. 54. The contracting by defendants for the instruction of pupils of school district No. 54 by school district No. 2 was beyond the power conferred by the Legislature by section 79-486, R. S. Supp., 1955, and was illegal, as was the action of the president and the treasurer in executing the contract on behalf of school district

No. 54. See Fulk v. School District, *supra*.

In Solomon v. Fleming, 34 Neb. 40, 51 N. W. 304, this court held: "A court of equity will, on the application of resident taxpayers, restrain public officers from doing an illegal act where the effect of such act, if consummated, would be a waste of public funds raised by taxation." See, also, McLain v. Maricle, 60 Neb. 353, 83 N. W. 85; Lindeman v. Corson, 93 Neb. 548, 141 N. W. 153.

In Roberts v. Thompson, 82 Neb. 458, 118 N. W. 106, this court held: "In an action instituted by a resident taxpayer, a court of equity will restrain public officers from illegally creating a debt or obligation which must be paid by taxation." See, also, Martin v. City of Lincoln, 155 Neb. 845, 53 N. W. 2d 923.

We believe that in the light of the authorities cited the appellees were entitled to resort to injunctive process to have the performance of the contract here involved enjoined.

The votes of Joseph P. Dolan, Kathryn Dolan, Harry W. Frey, and Mildred M. Frey, which were cast in favor of the proposition heretofore set out, were illegal votes. These four votes must be discounted. By not counting these four illegal votes, the result of the voting at the annual meeting of school district No. 54 on June 11, 1956, changed the voting on the proposition heretofore mentioned from 15 in favor and 12 against such proposition, to 11 in favor and 12 against the proposition. As a result of the election, the school board of school district No. 54 was not authorized by a majority of the votes cast at the annual meeting to contract with school district No. 2 for the instruction of the pupils of school district No. 54 for the 1956-1957 school year. There was a failure to comply with section 79-486, R. S. Supp., 1955. The school board of school district No. 54 was not authorized or empowered to enter into such contract, and the contract so entered into was beyond the power conferred by the Legislature and was void. Fulk v. School District, *supra*.

For the reasons given in this opinion the judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.