WILLARD RICHARDS ET AL., APPELLEES, v. VEARL MCBRIDE ET AL., OFFICERS OF SCHOOL DISTRICT No. 54, HITCHCOCK COUNTY, NEBRASKA, APPELLANTS.

68 N. W. 2d 692

Filed March 4, 1955. No. 33672.

*Charles M. Bosley,* for appellants.

*Russell & Colfer,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

Plaintiffs brought this suit to enjoin the officers of School District No. 54, Hitchcock County, Nebraska, from proceeding with the construction of an addition to the schoolhouse located on the northeast corner of Section 17 within the district. Upon a trial of the case the defendant officers were enjoined from proceeding with the construction of an addition to the schoolhouse. The defendants appeal.

The facts are not in dispute. In the spring of 1954 four rural school districts petitioned to be attached to School District No. 54. The merger of the four districts with School District No. 54 was completed on May 4, 1954, in full compliance with applicable statutes as a Class I school district. A notice of a meeting of the electors of School District No. 54 was thereupon given,

the purpose of which was to select a school site for the merged districts. At the meeting a motion was made to locate the schoolhouse on the northeast corner of Section 17, which was the site of the District No. 54 schoolhouse before the merger. It was agreed that the vote should be taken by secret ballot. The result of the vote was 43 for, 34 against, and 2 votes rejected. The chairman of the meeting declared the motion carried. Whether or not the motion carried by a sufficient percentage of the electors present is one of the main issues in the case.

The applicable portion of the controlling statute provides as follows: "The qualified voters in a school district of the first or second class, when lawfully assembled, shall have power * * * to designate a site for a schoolhouse by a vote of fifty-five per cent of those present, and to change the same by a similar vote at any annual or special meeting; * * *. A schoolhouse site shall not be changed more than once in any one school year." § 79-504, R. R. S. 1943.

It is clear that if the two persons casting the rejected ballots were not present within the meaning of the foregoing statute, the vote for the motion was in excess of the necessary 55 percent. If such two persons were present within the meaning of the statute, the motion did not carry by the required 55 percent.

The evidence shows that the two persons who cast the rejected ballots signed their names on the ballots and failed to designate whether they were voting for or against the motion. We think the case of Cunningham v. Ilg, 118 Neb. 682, 226 N. W. 333, is in point and controls the result. The holding of that case is summarized in the syllabus as follows: "One who was actually present at an annual meeting of a rural school district and entitled to vote on a change of schoolhouse site but who did not vote must, under section 6275, Comp. St. 1922 (now section 79-504, R. R. S. 1943), be counted as present in order to compute the requisite majority on that

matter." See, also, McLain v. Maricle, 60 Neb. 353, 83 N. W. 85. The two electors who were present and cast the two rejected ballots should have been counted as present within the meaning of the statute. We conclude that the motion fixing the site for the schoolhouse failed to carry by the requisite 55 percent. Consequently the site for the schoolhouse has not been fixed as required by the statute.

Appellants cite several cases which hold that in determining the ballots cast at an election, only ballots entitled by law to be counted are to be considered. But the present statute is in different language. It requires that 55 percent of the electors present must vote for the proposition in order to designate a site for a schoolhouse. An examination of the cases cited by the appellants shows that they are not based on statutory language requiring a fixed percentage of the electors present to carry the election. See Miller v. Mersch, 152 Neb. 746, 42 N. W. 2d 652; Greathouse v. Dix Rural High School Dist., 155 Neb. 883, 54 N. W. 2d 58. It is the different language in the statutes being considered that brings about a different result.

Appellants assert that even if this court should hold that the electors failed to fix the site of the schoolhouse by the required 55 percent of the electors present, appellees cannot maintain this action because of laches. The situation with respect thereto was as follows: Immediately following the meeting of May 14, 1954, at which the vote on the schoolhouse site was taken, the appellants gave notice of a meeting of the electors of the district to be held on May 21, 1954, to consider the transfer of funds from the general to the building fund for the purpose of building the addition to the schoolhouse. About an hour before the meeting appellee Willard Richards delivered to the secretary of the school district a request for a meeting of the electors of the district for the purpose of fixing the site for the schoolhouse. Appellants never called such a meeting, although the re-

quest was signed by nine electors of the district and conformed with section 79-502, R. R. S. 1943. At the meeting of the electors of the district held on May 21, 1954, a motion to transfer $12,000 from the general fund to the building fund was made. The motion prevailed with 52 electors voting "for" and no electors voting "against." The evidence is that the work was delayed until the opinion of the Attorney General could be obtained concerning the legality of the actions that had been taken. On June 17, 1954, the secretary of the district talked with appellee Willard Richards. He told him that the school board was going to proceed to build the addition to the schoolhouse and that a well would probably be drilled the following week. On June 22, 1954, all members of the school board again talked to appellee Willard Richards and advised him that an engineer had been hired, and that when the plans were drawn they were going to proceed to build the addition to the schoolhouse as directed by the electors of the district. They also advised him that they considered his request for an electors meeting illegal and that if he wanted to stop the school board from proceeding, it would take an injunction to do so. About May 22, 1954, the school board employed an engineer. The school board caused a well to be drilled and paid $598.50 therefor on June 16, 1954. The engineer was paid $200 for preparing the plans. The board contracted for the addition to the schoolhouse in the amount of $9,996. Contracts were made for a furnace in the amount of $850 and for a sewer and septic tank in the amount of $450. Other expenses were incurred in the amount of $300. Three acres of land were acquired for school purposes. The basement was staked out on July 6, 1954. The basement was thereafter partially excavated. The injunction stopping the work was filed on July 9, 1954. It is contended that appellees were fully informed of the work being done and the actions being taken by the school board, and that they stood by and did nothing about it.

This is the basis for appellants' claim that appellees were guilty of such laches as to bar the bringing of the injunction suit.

The term "laches" in its legal significance implies something more than the passage of time; it is delay that works to the disadvantage of another. The delay required necessarily varies with the nature of the situation to which it is sought to be applied. It is in the nature of an estoppel by conduct. One in full possession of the facts may not ordinarily acquiesce therein until there has been a change in circumstances made in good faith and then contest the validity of the actions taken where success would cause substantial damage to the other party. It is here contended that appellees unduly delayed in questioning the result of the election called to fix the site of the schoolhouse. With respect to this point, the Kansas court summarized the rule in the syllabus in the case of Drenning v. The Board of Commissioners of the City of Topeka, 148 Kan. 366, 81 P. 2d 720, 117 A. L. R. 884, as follows: "One who contends that there are defects in the election by which a public improvement is authorized, and who desires to question the election in court, should act promptly. He may be barred by laches if he waits until the city has expended substantial sums on the improvement and the rights of third parties have intervened, and he may be estopped by his conduct from being heard in a court of equity on his objection to the election."

We do not think the rule has any application to the present case. The election was held on May 14, 1954. On May 21, 1954, seven days later, the appellee Willard Richards presented a written petition to the secretary of the school board requesting that a meeting of the electors of the school district be called to fix the site of the schoolhouse. This was notice that the election of May 14, 1954, was being questioned. On June 17, 1954, the secretary of the school board talked with appellee Willard Richards and advised him of the inten-

tion of the school board to go ahead with the construction. On June 22, 1954, the three members of the school board called on Richards and advised him of their intention to proceed with the construction and that it would take court action to stop them. Richards' response was that he thought an election fixing the site for the schoolhouse should be held. He did not acquiesce with the intention of the school board to proceed. A letter from the Attorney General came into the hands of the parties at about this stage in the proceedings in which it was stated: "Apparently, from the facts stated therein (the letter of inquiry) that at the meeting which was held on May 14, 1954, the motion for the location of the school site did not carry by the vote required by statute of '55 per cent of those present.'" There is no evidence in the record that appellee Willard Richards acquiesced with the school board's plan to proceed; nor is there any evidence in the record that appellee Willard Richards knew that the well had been drilled, or an engineer employed. He observed that excavation was commenced on July 8, 1954, and this suit was commenced on the following day.

We point out that the evidence shows no acquiescence, estoppel, or laches on the part of Willard Richards. The record is void of any evidence whatsoever concerning any knowledge of the other appellees and, consequently, there could be no acquiescence, estoppel, or laches as to them. The good faith of the appellants, as that term is legally used, could well be questioned in view of the Attorney General's letter which came into their possession. With knowledge that the Attorney General deemed the election fixing the schoolhouse site as a nullity, the school board elected to proceed. We cannot say, under the circumstances here recited, that appellees acquiesced in the announced result of the election or in the construction of the addition to the school building before that was done. There is no evidence to sustain an estoppel or that appellees were guilty of

laches. While the actions of the school board members were undoubtedly motivated by a desire to have the schoolhouse ready for use at the beginning of the next school term, we cannot say that they proceeded with the good faith demanded of one who asserts acquiescence, estoppel, or laches as a defense to his illegal action.

The trial court came to the same conclusion. It was correct in so doing.

AFFIRMED.

BOSLAUGH, J., participating on briefs.