STATE, EX REL. WESTERN BRIDGE & CONSTRUCTION COMPANY, RELATOR, v. GEORGE W. MARSH ET AL., RESPONDENTS.

FILED NOVEMBER 16, 1923.   No. 23680.

1. States: APPROPRIATIONS: DEFICIENCIES. The appropriation for one biennium cannot be resorted to for the purpose of supplying the deficiencies of the preceding biennium. *Opinion of the Judges*, 5 Neb. 566.

2. ——: ——: ——. Whether or not the legislature intended its appropriation for the biennium of 1923 and 1924 to meet federal aid to be used to pay indebtedness incurred dur-

186 NEBRASKA REPORTS [VOL. 111

State, ex rel. Western Bridge & Construction Co., v. Marsh.

ing the years of 1921 and 1922, the provisions of the Constitution in connection with the terms of said appropriation inhibit such payment, and the state auditor is not at liberty to issue his warrant for such a purpose.

3. Highways: APPROPRIATIONS TO MEET FEDERAL AID. The engagement of the state to meet federal aid only requires it to meet such aid with reasonable dispatch, considering its laws. Such engagement does not exempt it, in dealing with the federal government, from the direction of its Constitution and the operation of its statutes.

4. Mandamus: ISSUANCE OF WARRANT ON EXHAUSTED FUND. Where a fund has been paid out and exhausted, the auditor will not be compelled to issue a warrant thereon even to pay a valid claim against said fund, unless it is certain that such fund will be replenished; and this is so though the fund has been exhausted by unauthorized payment or other misapplication.

5. Highways: CLAIMS: EXHAUSTION OF APPROPRIATION. A claimant's contract is not impaired by the fact that the fund appropriated to pay him has been diverted or exhausted, provided the original appropriation was sufficient to satisfy his contract and others covered thereby.

Original proceeding in mandamus to compel respondents to issue warrants for highway construction. *Writ denied.*

*James E. Rait,* for relator.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

*Arthur F. Mullen, amicus curiæ.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., SHEPHERD, District Judge.

SHEPHERD, District Judge.

This is an action in mandamus to require the respondents to issue warrants to pay the relator, and others similarly situated, for work done on certain federal aid projects of the state. There is no dispute as to the facts. The claims amount to perhaps half a million dollars. All of them arise upon contracts made and work done during the 1921-1923 biennium. All of them have been approved by the depart-

State, ex rel. Western Bridge & Construction Co., v. Marsh.

ment of public works, and by the department of finance as to amount. The contracts have been fully performed and the contractors are entitled to their pay.

But the respondents are unwilling to issue the warrant which the relator seeks, because the department of finance did not approve his claim without reservation; and because the claim belongs to the biennium ending June 30, 1923, while the money appropriated for that biennium has been exhausted. A warrant drawn upon the state aid road fund would probably result in the payment of the claim from the appropriation for the present biennium, which runs from June 30, 1923, to July 1, 1925. The respondents doubt that this would be lawful.

The obstacle in the way of granting the prayer of the petition, and so permitting these deserving claimants to have an immediate settlement of their demands, lies in the fact that payment is sought from the appropriation for 1923-1925, which appropriation is devoted to contracts made and work done during the present biennium, and cannot lawfully be applied to the obligations of the biennium preceding.

This 1923-1925 appropriation was made in an act entitled "An act making appropriations for the state government, for the biennium ending June 30, 1925, and the conditions of payment thereof." Laws 1923, ch. 28. And the Constitution of the state provides (section 22, art. III): "Each legislature shall make appropriations for the expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, and all appropriations shall end with such fiscal quarter. And whenever it is deemed necessary to make further appropriations for deficiencies, the same shall require a two-thirds vote of all the members elected to each house, and shall not exceed the amount of revenue authorized by law to be raised in such time." Also, section 25, art. III: "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the auditor thereon, and no money shall

188          NEBRASKA REPORTS          [VOL. 111

State, ex rel. Western Bridge & Construction Co., v. Marsh.

be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution."

Plainly, these provisions, in connection with the act itself, limit the appropriation now in the treasury to the obligations of the present, and prevent its use for the payment of those of the past. True, certain claims of the year of 1919 or 1920 were paid from the appropriation for 1921 and 1922, and the legislature, presumably knowing that this had been done, made the appropriation for the present biennium without criticising the practice. The relator notes this circumstance and insists that the practice thus in vogue should receive recognition at the hands of the court in dealing with the present situation. But the true rule is that a practical construction put upon an ambiguous statute by officials charged with its execution, if long acted upon and acquiesced in, will not be lightly disregarded by the courts. *Rohrer v. Hastings Brewing Co.*, 83 Neb. 111; *Douglas County v. Vinsonhaler*, 82 Neb. 810; *State v. Sheldon*, 79 Neb. 455. Clearly this rule can have no application here. The practice of the officials in the last preceding biennium was not of long standing. The language of the act of appropriation was not ambiguous. The provisions of the Constitution are not doubtful. For years the rule of law has been in direct opposition to the practice in question. *Opinion of the Judges*, 5 Neb. 566. In this opinion, handed down nearly half a century ago, the supreme court said concerning these constitutional provisions and a biennial appropriation that "we do not see how there can be a difference of opinion among men accustomed to the construction of statutes." Consistently since that early date, the law of Nebraska has been that an appropriation of the sort in question is for the debts and expenses of the particular period or biennium for which it is made, and not for those of any preceding year.

Nor is it clear that the legislature intended to make the appropriation for the present biennium applicable to the debts of the past, though the relator contends that this is

State, ex rel. Western Bridge & Construction Co., v. Marsh.

evident from what the governor said in his budget message to the legislature, coupled with what the legislature did in the light of it. The excerpt cited is as follows, as taken from the relator's brief:

"There is approximately $1,096,000 unpaid on contract work done on the state highways last year. These road contracts entered into during 1922 seem to mortgage the revenues of the state for nearly a year ahead."

It is quite possible that this statement from the pen of the executive was less to sanction the referred to practice than to expose the abuse. Be that as it may, the legislature and the governor will be presumed to have been mindful of the covering provisions of the Constitution and of the construction so long placed on them. Being so advised as to the facts and being so mindful of the law, the legislature did not in any way intimate in its appropriation for the coming biennium that it intended that such appropriation should be used to satisfy debts already incurred. There was work to be done and to be paid for during the two years to come. It was not expected that the federal aid projects of the state would stand still. The legislature must have contemplated that the improvement program would continue. To provide for its continuance the 1923-1925 appropriation was made. As a matter of law the legislature could not provide for the payment of past obligations out of an appropriation for the expenses of a future period. It did not attempt to do so, and that it did not intend anything of the kind is apparent from the house journal for 1923, page 1125:

"That with the balance due from the federal government on the road building program collected, sufficient money will be available to meet all contracts entered into."

It remains to consider the contention of the relator that a warrant should in any event issue against the fund of 1921-1923. To what end? That fund has been exhausted. Warrants were allowed in *State v. Brian*, 84 Neb. 30, because in that case the money appropriated remained to be collected in the ordinary course by taxation. The court

regarded it as certain. In this case the money was collected —was in the fund—but has been paid out. Why should the auditor issue a warrant upon a fund that has vanished and is no more? This court should not require him to do a vain thing. It is to be noted, of course, that the auditor says in his return that the fund may be replenished by a return from the federal government, but this is problematical. He adds that if this happens he will be ready to draw his warrant against it, the department of finance approving, without delay. This assures the relator that if the fortunate thing happens he will speedily have such relief as it affords. If it be certain that the appropriation of the past biennium is to be replenished, the relator should have shown it. Upon conjecture or uncertainty the writ ought not to issue. For reason and authority, see dissenting opinion in *State v. Brian, supra,* which upon this point is particularly applicable. The writer has not failed to carefully examine the cases cited by the relator upon this point, and the court is not inclined, because of the authority of such cases, to adopt a conclusion contrary to the one above expressed. The doctrine is squarely announceed in *American Metal Ceiling Co. v. New Hyde Park Fire District,* 154 N. Y. Supp. 661, and in *State v. Irwin,* 74 Wash. 589, that in the eyes of the law the fund of a sufficient appropriation remains intact, though in fact depleted, and that a warrant should issue thereon. But in a later New York case, *People v. Nowak,* 163 N. Y. Supp. 374, the court expressly said that, if it were pleaded and proved that the fund was lacking, that might constitute a defense. In the California cases, also, *McEvers v. Boyle,* 25 Cal. App. 476, and *Scott v. Boyle,* 25 Cal. App. 806, the referee found as a matter of fact that the fund still existed, though stating in his conclusions of law that it was immaterial whether it did or not, and the court declared in its syllabus that such fund would be presumed to have remained intact. *State Bank v. City of Miami,* 43 Okla. 809, deals with warrants which had been duly issued, and is not persuasive upon the point in question.

The relator ingeniously argues that, since these appropriations are all to meet federal aid, the bills should be paid when the work is done, regardless of whether the money is taken from one appropriation or another. But this, it seems to us, is rather a fanciful interpretation of the contract between the state and the United States. Interpreting more simply and more practically, the state is bound to pay with reasonable promptness, considering its laws. But conceding, for the sake of argument, that the state is obliged to do better in this regard than it is doing, we repeat that it is beyond the power of the respondent state officials to apply the money appropriated for this biennium to the payment of debts made in the preceding one; and we add that, despite the urgency of the situation, the court cannot step aside from its function and invest state officials with such power.

Undoubtedly all should be done that can be done to care for these obligations without further delay. The contracts of the claimants were not impaired by the depletion or diversion of the funds of 1921 and 1922, nor were the claimants bound to take notice of the same. Such contracts were, and are, valid and subsisting contracts, honestly acted upon and fully performed. It might be well to convene the legislature, though at great cost, to provide for these obligations by deficiency appropriation. But this is, of course, for the executive and legislative branches of the government to decide.

For reasons above stated, the writ is denied and the action dismissed at the costs of the relator.

WRIT DENIED.