[File No. 6865.]

JESS WILLARD, Respondent, v. WARD COUNTY, NORTH DAKOTA, a Municipal Corporation, Oscar Olson, and All Other Persons Unknown, Claiming Any Estate or Interest in or Lien or Encumbrance upon the Property Described in the Complaint, Appellants.

(6 NW(2d) 566.)

Opinion filed November 30, 1942.

*Ben A. Johnson, B. A. Dickinson,* and *Robert H. Bosard,* for appellants.

*Halvor L. Halvorson,* for respondent.

Burr, Ch. J.  One Olaf Olson was the owner of some lots in Minot, and on his death left a will devising them to his son Oscar and his other children.

The county became entitled to and received a tax deed.  The county

appraised the lots at $400, but the property was not sold at the annual sale in 1941.

On November 4, 1941, the plaintiff made a contract with the county auditor to buy the land at the appraised valuation and paid down 25% of the purchase price.

The defendant, Oscar Olson, obtained waivers of interest from the other heirs, and thus claims to be the successor in interest in the land because of this fact, and in addition to the fact that he is one of the heirs.

On November 19, 1941, Oscar Olson offered to purchase this land from the board of county commissioners and asked this board to fix a valuation as provided for in § 19 of chapter 286 of the Session Laws of 1941. The county commissioners reappraised the land at $500 which sum was paid on November 21, 1941. The board thereupon directed the auditor and the chairman of the board to give Olson a deed to the property, and the deed was executed, and delivered.

Thereafter, the plaintiff tendered to the county the remainder of the purchase price he was to pay and demanded a deed, which was refused.

Plaintiff then commenced this action to quiet title in himself, basing his right of action on the contract made between him and the auditor. The county answered disclaiming any interest in the land and alleging it sold the land to Oscar Olson. Olson claims title under the deed obtained from the county, in accordance with the facts hereinbefore set forth. The trial court found for the plaintiff and the defendants appeal.

The issue turns on the construction of §§ 17, 18 and 19 of chap. 286 of the Session Laws of 1941.

Section 17 reads as follows: "That all parcels of real estate not sold at the annual November sale, may be sold by the County Auditor at private sale at any time before the next annual November sale, provided that no such sale shall be made by the County Auditor at a price less than the minimum sales price fixed by the Board of County Commissioners prior to the annual November sale."

This property, not having been sold at the annual November sale, was sold by the auditor at private sale, at some time "before the next

annual November sale" and for the price "fixed by the board of county commissioners." Thus, so far as plaintiff's claim to title is concerned, he took the proper initial steps, and in paying a portion of the price observed the requirements of sale set forth in § 14.

Section 18 of chap. 286 provides: "All private sales of real property made between the annual November sales, shall be made upon the same terms and conditions as sales are authorized to be made at the annual November sale, provided, however, that if such property is sold at private sale to any other person than the original owner or his successor in interest, such sale shall be held in abeyance for a period of thirty (30) days from the date of notice to the owner or his successor in interest given by registered mail by the county auditor, during which time the original owner or his successor in interest may make redemption by payment in full of delinquent taxes, penalty and interest charged against such real estate. Provided, further, that if no redemption is made by the original owner or his successor in interest during said period of thirty (30) days, then the sale shall be final and the purchaser shall be entitled to a deed as provided herein. . . ."

The sale to plaintiff was "a private sale" to a person other "than the original owner or a successor in interest." The sale could not vest title in him until all statutory requirements were observed.

Section 19 provides: "The owner, or his successor in interest, shall have the right to repurchase all real estate heretofore or hereafter, forfeited to the county under tax deed proceedings, so long as the tax title thereto remains in the county. Such purchase may be made for cash. . . . Provided that if the fair market value of such property at the time of the repurchase thereof, is less than the total amount to be paid to effect a redemption. . . . The Board shall fix a fair and just sales price for such property. . . . Upon the full performance of such contract, the county shall execute and deliver a deed to the purchaser which shall be executed in the same manner as tax deeds and shall have the same legal effect as prescribed by the terms of this Act."

This section provides that such transaction shall be had with the board of county commissioners. It is under this section the defendant Olson acted.

Section 18 makes provision for redemption. Oscar Olson as the successor in interest does not claim to be in the position of a redemptioner nor did he attempt to act under the provision of this section.

It will be noticed that § 19 gives an additional right to the "owner or his successor in interest." It is a right to repurchase.

Section 17, already quoted, provides that a contract or a sale between a private person and the county be made with the auditor as representative of the county. Section 19, making provision for repurchase by the owner or his successor in interest requires the contract be made with the board of county commissioners "so long as the tax title thereto remains in the county." Clearly Oscar Olson was the successor in interest to the record owner of the property at the time the county obtained its tax deed and it is just as clear that when he purchased the land from the board of county commissioners "the tax title" to the land remained in the county.

It is the claim of the plaintiff that after he made his contract with the auditor the title to the land vested in him, that there had been an actual sale of the land and the county merely held the naked legal title. The plaintiff claims that the sale was such that title actually passed.

We cannot agree with this contention. Plaintiff's rights are governed by § 17. However, such a contract as he made did not become a completed sale for § 18 specifically provides that "such sale shall *be held in abeyance* for a period of thirty (30) days from the date of notice to the owner or his successor in interest." No such notice had been given when Olson purchased. Until such notice was given and for thirty days thereafter the sale was "in abeyance," no matter whether Olson redeemed or repurchased. The term "abeyance" means certain rights or conditions are "in expectancy." It clearly implies that the situation is not yet fully completed. When a matter is in abeyance it is in a condition of being undetermined. It is not finally settled. See Fenn v. American Rattan & Reed Mfg. Co. 75 Ind App 146, 149, 130 NE 129, 130; Illinois C. R. Co. v. Bosworth, 133 US 92, 101, 33 L ed 550, 553, 10 S Ct 231. While such a sale was in abeyance the plaintiff's rights, though potentially existing, were unknown in their fullness. They might be defeated and therefore the absolute

title to the land did not vest in him, and could not vest until all other rights were extinguished. Plaintiff further claims that the provisions of § 19 were not intended to apply where one had taken advantage of the provisions of § 17; that where, as was done in this case, a contract of purchase was entered into under the provisions of § 17 the only remedy the owner or successor in interest had thereafter was that of redemption.

This contention overlooks the history of chapter 286 involved here. This chapter covers conditions which heretofore had been governed by chapters 235 and 238 of the Session Laws of 1939, and while repealing these chapters creates a law more comprehensive in design. Chapter 235 of the Session Laws of 1939 dealt with the sale of land forfeited to the county through tax deed, made provision for sale at public auction after appraisal and permitted a sale by the county auditor similar to the sale provided for in § 17 of chapter 286 of the Session Laws of 1941. Chapter 238 of the Session Laws of 1939 made provision for a resale "to the former owner or his successor in interest . . . upon same terms as redemption could be made" but such resale had to be for the amount of delinquent taxes, penalty and interest, etc.

When chapter 286 of the Session Laws of 1941 was enacted it took into consideration the provisions of these two chapters of the Session Laws of 1939 but made provision for a case where the value of property involved, in the judgment of the county commissioners, did not equal the amount of delinquent taxes and interest. In such case the county commissioners, by § 19 of this chapter 286 of the Session Laws of 1941, could determine the value of the property involved and give the owner or his successor in interest the right to purchase the same so long as the title remained in the county. Thus the owner or his successor in interest had two options when dealing with the property. He might redeem by paying delinquent taxes, interest and penalty, or he might repurchase by paying the actual value of the property. Where the actual value of the property was in excess of the delinquent taxes naturally he would redeem; but at public auction no one would purchase for more than its actual value no matter what was the amount of the delinquent taxes, and so the former owner was given preference.

The legislature was favoring the owner or his successor in interest and so long as the county received the actual value no injury was done to the public. Section 19 of the Session Laws of 1941 was intended to govern such situations. The language of the section is not otherwise compatible with the general tenor of the act.

When the county obtained property by tax title and the same was not sold at public auction it could within the year be sold at private sale by the county auditor and notice of the intended sale be given to the owner or successor in interest. This permitted the latter to do one of two things—he could redeem, or he could go to the county commissioners and have a fair valuation made at the time he was purchasing and as long as the title still remained in the county he had the preference to purchase.

When Olson made his contract with the county commissioners under the provisions of § 19 the tax title still remained in the county and the board had the right to fix a fair market price at the time of repurchase and sell the land to the successor in interest. There is no question raised as to the amount fixed by the board of county commissioners being a fair market price. It was $100 more than Willard offered and it was paid in cash. Therefore, when Olson got his deed the title to the property vested in him and the sale made by the auditor to the plaintiff under the provisions of § 17, became a nullity. The judgment is reversed and title to the property is quieted in defendant Olson.

NUESSLE, BURKE, MORRIS, and CHRISTIANSON, JJ., concur.