BERNYCE BELITZ, APPELLEE, V. CITY OF OMAHA, NEBRASKA, APPELLANT.

108 N. W. 2d 421

Filed March 31, 1961.  No. 34889.

*Herbert M. Fitle, Bernard E. Vinardi, Irving B. Epstein, Frederick A. Brown, Benjamin M. Wall, Edward M. Stein,* and *Steven J. Lustgarten,* for appellant.

*Tesar & Tesar, Eugene F. Fitzgerald,* and *Young, Holm, Miller & McEachen,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, and BOSLAUGH, JJ.

MESSMORE, J.

Bernyce Belitz brought this action in equity as plaintiff in the district court for Douglas County against the City of Omaha, a municipal corporation, defendant, to obtain a judgment directing the defendant to pay plaintiff a pension in the sum of $102.50 a month from May 16, 1954, to the date of plaintiff's death or remarriage. The trial court rendered judgment in favor of the plaintiff, granting a pension of $102.50 a month from and after May 26, 1954, so long as she remained unmarried. The defendant filed a motion for new trial. The trial court overruled the defendant's motion for new trial and defendant appealed to this court.

Michael J. Belitz, referred to in the record as M. J. Belitz, was appointed to the fire department of the city of Omaha on December 3, 1908, served in such department for 24 years, 9 months, and 23 days, and retired from such service on September 26, 1933. Upon his retirement, M. J. Belitz was placed on the defendant's pension list and was paid a pension of $102.50 a month from the date of his retirement until the date of his death, May 16, 1954. On September 12, 1939, M. J. Belitz married the plaintiff. On May 24, 1954, the plaintiff made application for a widow's pension. The city council of the city of Omaha, by resolution adopted June 8, 1954, awarded plaintiff, widow of retired fireman M. J. Belitz, a widow's pension effective May 16, 1954, the date of the death of M. J. Belitz. The city council, at a regular meeting held June 22, 1954, revoked and repealed the resolution granting the application of the plaintiff and ordered the application held in abeyance pending the result of pending litigation. The pending litigation referred to involved the question of whether or not widows, who were not married to firemen at least 1 year prior to the date of their retirement, were

eligible to receive a widow's pension.

Subsequently, the plaintiff, by her attorneys, renewed her request that her claim for a pension be allowed, and the claim was denied by a resolution adopted by the city council March 19, 1957. All procedural steps were taken to appeal to the district court from the denial of the plaintiff's claim for a widow's pension as ordered by the city council on March 19, 1957, and a petition was filed in the district court on April 3, 1957.

The city of Omaha is a city of the metropolitan class and operates under a home rule charter. We will refer to the city of Omaha as the city.

The city assigns as error that the trial court was without jurisdiction to render a judgment, and that the trial court's judgment was not supported by sufficient evidence and was contrary to law.

Article VI, section 2, of the city charter of the city of Omaha is a part of the original home rule charter of the city adopted July 18, 1922, pursuant to Article XI, section 5, of the Constitution of Nebraska, and is a verbatim adoption of the language now contained in 14-705, R. R. S. 1943. It provides in part: "All metropolitan cities having a paid fire department, shall pension all firemen of the paid fire department, whenever such firemen shall have first served in such fire department for the period of twenty-one years, and shall elect to retire from active service and go upon the retired list. Such pension shall be paid by the city in the same manner as firemen upon the active list are paid, and such pension shall be at least fifty per cent of the amount of salary such retiring fireman shall be receiving at the time he goes upon the pension list; Provided, in no case shall the amount of such pension be less than fifty dollars per month. *At the death of any retired fireman the same rate of pension as herein provided shall be paid to the widow of such deceased fireman during such time as she shall remain the widow of such deceased fireman * * *.*" (Emphasis supplied.)

Article VII-A of said city charter was added to the city charter by ordinance adopted by the electorate of the city, and became effective June 30, 1942. Sections 2, 8, and 15 of Article VII-A are the only sections pertinent here. On the date of the death of M. J. Belitz, they provided in part: "Section 2. Notwithstanding the provisions of Sections 13 and 13A of Article V and Section 2 of Article VI of the existing City Charter of the City of Omaha, and the provisions of any other section, or any amendment or supplement thereto, when any member of the Police or Fire Department of the City of Omaha shall have served twenty-five (25) years, or over, in the aggregate, as a member, in any capacity or rank whatever, of the regularly constituted Departments of the City of Omaha, being of the age of fifty-five (55) years, or over, such person shall have the absolute right and be entitled, on his application made in writing to the City Council, to retire from active service on such Departments and shall be allowed a pension of Seventy ($70.00) Dollars per month; PROVIDED, that any such applicant must be a member of either of said Departments at the time of making such application in order to be entitled to the benefits of this act, and PROVIDED, further that when any member shall have served twenty-six (26) years he shall be entitled to an additional dollar of pension per month, and for each additional year of service, such member shall be entitled to an additional dollar of pension per month, but in no case shall a member receive a pension in excess of a total of Eighty ($80.00) dollars per month. *If, upon the death of any such retired member of the Departments, he leaves surviving him a widow who was legally married to said member at least one (1) year before his retirement, a pension of Forty ($40.00) Dollars a month shall be paid to such widow for the benefit of herself and minor children, so long as she shall remain the widow of such retired member,* * * *." (Empasis supplied.)

"Section 8. This Act shall apply to all members of

the Departments of the City of Omaha who are members at the time this Act becomes effective or who are thereafter appointed, except such members who are eligible to retire, at the time this Act becomes effective, under the provisions of Section 13 of Article V or Section 2 of Article VI of the City Charter of Omaha, but who have not retired, under either of the foregoing Charter provisions and they shall be allowed a pension as provided by Section 13 of Article V for members of the Police Department, and Section 2 of Article VI for members of the Fire Department, at anytime thereafter, on application in writing to the City Council in accordance with said Sections. Members who have retired on a pension, and widows and minors receiving a pension, prior to the effective date of this Act, shall not be affected by any of its provisions. * * *"

"Section 15. This Act shall become effective at 12:00 midnight of June 30, 1942."

Article VI, section 2, of the city charter was not repealed by the amendment adding Article VII-A, and Article VI, section 2, remained a part of the city charter.

The city contends that the trial court did not have jurisdiction of the subject matter because the action of the city council taken on June 22, 1954, revoking and repealing the previous action and holding the granting of the pension in abeyance pending other litigation, was a final order; and that a jurisdictional question may be raised at any stage of the proceedings.

The question of filing the appeal out of time was not raised by the city in the trial court.

In Anania v. City of Omaha, 170 Neb. 160, 102 N. W. 2d 49, this court held that the want of jurisdiction may be taken advantage of during any stage of the proceedings. See, also, Barney v. Platte Valley Public Power & Irr. Dist., 144 Neb. 230, 13 N. W. 2d 120.

The city asserts that in the action taken by the city council on June 22, 1954, wherein it revoked and repealed the pension granted to the plaintiff, the language

that the application be "held in abeyance" was mere surplusage; that the plaintiff was entitled to an adjudication on the merits of her claim in 1954; and that by failing to appeal at that time plaintiff had waived her rights, and jurisdiction of the subject matter was now lacking. We are not in accord with the contention of the city.

The term "abeyance" means certain rights or conditions are "in expectancy." It clearly implies that the situation is not yet fully completed. When a matter is held in abeyance it is in a condition of being undetermined. It is not finally settled. See, Willard v. Ward County, 72 N. D. 291, 6 N. W. 2d 566; Fenn v. American Rattan & Reed Mfg. Co., 75 Ind. App. 146, 130 N. E. 129; Illinois C. R. R. Co. v. Bosworth, 133 U. S. 92, 10 S. Ct. 231, 33 L. Ed. 550.

In Otteman v. Interstate Fire & Cas. Co., Inc., 171 Neb. 148, 105 N. W. 2d 583, this court said: "A final order within the meaning of section 25-1902, R. R. S. 1943, is one which determines the action and prevents a judgment; one which affects a substantial right in a special proceeding; * * *. An order is final only when no further action is required to dispose of the cause pending, but when the cause is retained for further action the order is interlocutory."

In the light of the above authority we conclude that the order was interlocutory and not final. Consequently, the right of the plaintiff to a widow's pension remained to be determined.

In determining this appeal, the following rules of law are applicable to the provisions of the home rule charter of the city to be considered here.

"In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular

part considered separately." City of Seward v. Gruntorad, 158 Neb. 143, 62 N. W. 2d 537.

The purpose of pension laws is beneficial, and statutes of that character should be liberally construed in favor of those intended to be benefited. See, Colton v. Board of Trustees of Pension Fund, 287 Ill. 56, 122 N. E. 73; McCarthy v. City of Oakland, 60 Cal. App. 2d 546, 141 P. 2d 4; Schock v. Chappell, 231 Ind. 480, 109 N. E. 2d 423.

The city contends that Article VII-A, sections 2, 8, and 15, govern the rights of the plaintiff to a pension, and under such sections she is not entitled to a pension for the reason that a vested right to a pension does not exist in the employee's widow until the event happens upon which the obligation to pay the pension depends.

The city cites Lickert v. City of Omaha, 144 Neb. 75, 12 N. W. 2d 644, wherein this court said: "Until the particular event happens upon which the pension is to be paid there is no vested right in the police officer to such payments." This case did not involve the right of a widow to a pension under any article or section of the city charter.

A case in point with the factual situation in the instant case is Schock v. Chappell, *supra*. The question there was whether a widow of a policeman was entitled to be placed on the pension roll of the South Bend police pension fund and to be paid the widow's allowance under said fund during her life while unmarried. Her husband joined the police force in 1898, and retired in November 1920. On September 30, 1922, while a widower, he married the claimant. He died January 16, 1950. The widow asserted her rights under certain provisions of the Acts of 1905, which were amended in 1907. The entire Acts of 1905 were repealed by the Acts of 1925. Under the latter act, the police pension funds were reorganized and reestablished, and the widow, under the 1925 Act, was barred from receiving any

benefits from such fund. The court said that the deceased husband drew benefits from the fund at the rate provided for in the 1905 Act, as amended, from the time of the passage of the 1925 Act until his death, and since he was, by the terms of the act under which he was recovering benefits, exempt from the provisions of the Acts of 1925, and the Acts of 1925 did not apply to him during his life, for the same reason it would not apply to his widow whose rights flowed from her deceased husband, therefore the widow's rights were governed by the Acts of 1905.

In the above-cited case, the pensioner qualified for a pension under a prior act. After his retirement, a new pension law was enacted under which he did not qualify. That pension act put restrictions on a widow's pension not contained in the act under which he retired. The court held that absent some clear expression that the subsequent act was intended to be effective other than prospectively, neither the pensioner's rights nor the rights of any widow left by him would be altered by the subsequent act. This is analogous to the situation in the instant case.

In the case of West v. Anderson, 187 Ga. 587, 1 S. E. 2d 671, the court said: "We now hold that where, before the act of 1935, reducing the amounts of 'pensions,' an Atlanta fireman had been retired in 1932, and was receiving a 'pension' of $100 a month under the prior acts up to the time of his death in 1937, and where, during the period of such payments and at the time of his death, he had a wife, such widow, even though she had not yet drawn the 'pension' at the time of the act of 1935, and was not entitled thereto until after the death of the husband, nevertheless had such a vested right as, by virtue of art. 1, sec. 10, par. 1, of the constitution of the United States (Code, § 1-134), and art. 1, sec. 3, par. 2, of the constitution of the State (Code, § 2-302), could not be altered by the later act. Such a right was not merely contingent, but was more

analagous to a vested remainder or salable interest, subject to be divested and to go to other beneficiaries upon her dying or remarrying before receiving payments."

There are cases, none from this jurisdiction, cited by the city to the effect that the widow's right to a pension vested at the time of her husband's death under certain acts set forth in such cases. These acts are dissimilar to the articles and sections of the city charter considered here, and are not applicable to a determination of this appeal.

Under Article VI, section 2, of the home rule charter of the city of Omaha, all rights to a fireman's pension are fixed at the date of his retirement and his wife would be entitled to a pension upon his death in accordance with the charter provision as it then existed, and subject to the condition therein contained that if she remarried her pension rights would terminate.

In the light of what has heretofore been stated, Article VII-A is not applicable to any rights the plaintiff has to receive a widow's pension. Her rights to such a pension are governed by Article VI, section 2.

There also appears in the record an exhibit showing a list of the widows of retired firemen granted pensions by the city council pursuant to provisions of section 14-705, R. S. 1943, or section 14-702, C. S. 1929, since June 30, 1942. On this exhibit are shown the date the original pensioner retired, the date of death, the pensioner's salary, and the monthly pension to his widow, all of which were in accordance with Article VI, section 2, of the charter, from and after the effective date of the adoption of Article VII-A and all of the sections relating thereto. The amount of the pensions paid to such widows was determined pursuant to Article VI, section 2, and that is the manner in which the city determined the pension right of such a widow, as shown by the exhibit, which was not less than 50 percent of the deceased member's last salary while serving in the fire department.

Section 14-705, R. S. 1943, section 14-702, C. S. 1929, and section 14-705, R. R. S. 1943, adopt the same language appearing in the home rule charter of the city as Article VI, section 2.

It is obvious that the city admits that the widows shown in the exhibit were granted their pensions under the terms of Article VI, section 2, not under Article VII-A, which was never a part of the Nebraska statutes.

In Flint v. Mitchell, 148 Neb. 244, 26 N. W. 2d 816, this court said: "The determination of the questions involved in this case depends upon the proper meaning, interpretation, and application of certain statutory provisions. * * * In Rohrer v. Hastings Brewing Co., 83 Neb. 111, 119 N. W. 27, it was said: 'Long-continued practical construction of a statute by the officers charged by law with its enforcement is entitled to considerable weight in interpreting that law.' This statement of principle was approved in Laub v. Furnas County, 104 Neb. 402, 177 N. W. 749, and again in State ex rel. Western Bridge & Construction Co. v. Marsh, 111 Neb. 185, 196 N. W. 130."

Bearing in mind that the pensions paid to such widows as shown by the exhibit were computed under Article VI, section 2, that most of these pensions were paid after 1954, that none were less than 50 percent of the member's last salary, and that the city's previous construction of these portions of the city charter was followed for 12 years prior to this litigation, we believe such interpretation should be followed in this case.

The foregoing is another reason supporting the plaintiff's right to a widow's pension under Article VI, section 2, of the city charter.

Other matters are raised which we deem unnecessary to determine.

We conclude that the judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.