REQUESTED BY: The Nebraska Ethanol Authority and Development Board
The Nebraska Ethanol Authority and Development Board (the "Board") has requested an Attorney General's Opinion regarding Nebraska law concerning the encumbrance of funds by the Board prior to the expiration of the Ethanol Authority's appropriation on June 30, 1992, for actual payment subsequent to that date. Specifically, the question presented is whether the Board may, utilizing its appropriation which expires on June 30, 1992, make payment for investment units in Nebraska Nutrients subsequent to June 30, 1992, if the Board unconditionally commits or encumbers such funds prior to June 30, 1992.
Nebraska Revised Statutes section 66-1307(1) (Reissue 1990) provides for the creation of the Ethanol Authority and Department Cash Fund. This fund may be utilized to acquire an ethanol production facility or otherwise make an investment in such a facility. Id.; 66-1307.01. Pursuant to § 66-1307.02, "the state investment officer shall purchase shares of stock or otherwise make an investment utilizing the funds when so directed by the board."
The Board has granted, subject to this review, the request of Nebraska Nutrients, Inc. and Nebraska Nutrients, Ltd. for an extension of the termination date of the Board's commitment to invest in the Nebraska Nutrients project. Under the terms of the extension, the date on which the applicants must satisfy all conditions to the closing would be extended from January 15, 1992, until June 30, 1992. The actual closing could occur within forty-five business days after June 30, 1992, so long as the applicant satisfies all conditions on or before June 30, 1992.
The Constitution of the State of Nebraska provides "Each Legislature shall make appropriations for the expenses of the Government. And whenever it is deemed necessary to make further appropriations for deficiencies, the same shall require a two-thirds vote of all the members elected to the Legislature." Neb. Const. art. III, § 22. The Nebraska Constitution further provides "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued as the Legislature may direct, and no money shall be diverted from any appropriation made for any purpose or taken from any fund whatever by resolution." Neb. Const. art. III, §25. In interpreting these constitutional provisions, the Nebraska Supreme Court has held that "the law of Nebraska has been that an appropriation . . . is for the debts and expenses of the particular period or biennium for which it is made, and not for those of any preceding year." State exrel. Western Bridge Construction Co. v. Marsh, 111 Neb. 185, 188
(1923).
Likewise, a previous Attorney General's Opinion stated,
 Plainly, the constitutional provisions cited limit the appropriations stated therein to the obligations of the present and prevents the payment of obligations of the past subject to the conditions stated therein. The law of the State of Nebraska for the past one hundred years has consistently been that an appropriation of the type in question is for the particular period for which it is made an is not for a preceding year.
Attorney General Opinion No. 109, July 18, 1975.
Notwithstanding the above general principles it is possible, under limited circumstances, for an agency of government to issue warrants in one fiscal year in payment of obligations incurred in the previous fiscal year through the process of encumbrance.
The Nebraska Revised Statutes provide a description of what constitutes a valid encumbrance and what does not.
 For appropriation and expenditure purposes, encumbrances represent financial obligations which are chargeable to the current biennium's appropriation and for which a part of that appropriation is reserved. Encumbrances which are established in one biennium to be liquidated in a subsequent biennium shall be limited to the following types of transactions:
 (1) A purchase order is issued, but the goods and accompanying invoice were not received and paid during the same biennium;
 (2) Goods or services were received, but an invoice has not been received and paid;
 (3) Goods or services and an invoice were received, but payment could not be made during the same biennium; or
 (4) Salaries have been earned and are payable to the employees, but have not been paid as of the end of the biennium as a result of pay periods not being consistent with the end of the biennium, except that higher education institutions may encumber payrolls for the remainder of the summer session which is in progress at the end of the state's biennium if they have been budgeted and appropriated in such manner.
Neb.Rev.Stat. § 81-138.01 (Reissue 1987).
 Contracts, other than a purchase order, for goods or services to be provided in a subsequent biennium do not represent valid encumbrances of current biennium appropriations and will require specific reappropriation by the Legislature. Only that portion of a contract which meets the criteria established in subdivision (2) of section 81-138.01 may be encumbered.
Id. § 81-138.02 (emphasis added).
No recorded court decision has interpreted these encumbrance statutes. According. to the State of Nebraska Accounting System Manual, "To be a valid encumbrance, a financial obligation must have been incurred on or before June 30 of the fiscal year end, as prescribed in State Statutes Section 81-138.01, R.R.S. 1943." (Encumbrance Certification Between Bienniums, Sec. No. Proc-013, page 1).
In Attorney General Opinion No. 206, dated February 25, 1982, it was stated, with regard to § 81-138.01:
 At first view this statute may appear to be an attempt to change the law as pronounced in Western Bridge. However, the Legislative history of that statute clearly indicates otherwise. Senator Warner, who introduced the bill, stated that its purpose was to ". . . place in the statutes clear definition of what kind of expenditures can be encumbered by an agency at the end of their fiscal year in order to be paid out the following year but using the previous year's authorized appropriation." Eighty-Fifth Legislature, Second Session, Floor Debate, January 11, 1979, p. 108. It therefore appears that section 81-138.01 defines those situations in which an agency may retain funds after the end of the fiscal year to pay for expenses incurred in that year. The statute is not in any way an attempt to authorize the use of current funds to pay past obligations.
 In any event, the holding in Western Bridge was based upon the state constitution. It is axiomatic that the constitution governs over a conflicting statute. If section 81-138.01 were an attempt to authorize the use of current appropriations to pay past obligations it would be ineffectual. We are therefore of the opinion that the 1981-82 appropriation cannot be used to pay obligations incurred in fiscal year 1980-81.
Thus, the Board may encumber funds only for those transactions described in § 81-138.01. Whereas the purchase of investment units in the Nebraska Nutrients project is not a purchase of goods or services, nor the payment of earned salaries, the Board could not create a valid encumbrance of appropriated funds by contracting for purchase of such investment units. See § 81-138.02.
However, the encumbrance statutes clearly apply only to encumbrances between bienniums. June 30, 1992 is the end of the first fiscal year of the biennium and not the end of the biennium. Therefore, although the Board may not create a valid encumbrance by means of a contract to invest in an ethanol facility, the encumbrance statute is not relevant until the end of the biennium.
The ability of the Board to make the anticipated investment in the manner proposed is 'dependent upon the language of the bill appropriating the Board's funds. Section 59 of LB 843, 92nd Legislature, 1st Session 1991, provides for the appropriation of $15,558,780 to the Ethanol Authority Cash Fund for fiscal year 1991-92 and $1,548,857 for fiscal year 1992-93. Pursuant to LB 843, Section 3, "all unexpended appropriation balances existing on June 30, 1992, to the respective agencies, programs and funds listed in this act" are "reappropriated" "for fiscal year 1992-93." Thus, any unexpended funds in the Ethanol Authority Cash Fund are automatically reappropriated. There is no need to create an encumbrance.
We would note that no warrant for the distribution of funds from the Cash Fund for the financing of or investment in any ethanol facility may be made until thirty days after the Board has filed a study of the proposed investment with the Department of Administrative Services. Id. § 59.
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
APPROVED BY:
________________________ Attorney General