REQUESTED BY: Douglas D. Christensen Commissioner of Education
In connection with your responsibilities as Commissioner of Education, and at the request of the State Board of Education, you have presented a series of questions concerning the issue of student fees in light of the Constitutional provision regarding free instruction in the public schools.
More specifically, you have presented a series of 13 questions concerning the meaning of free instruction and various aspects of the Department's and/or school districts' authority with regard to charging various student fees.
The Nebraska Constitution provides, in relevant part, "The Legislature shall provide for the free instruction in the common schools of this State of all persons between the ages of five and twenty-one years." Neb. Const. art. VII, § 1 (emphasis added). Due to the perceived lack of any definition of what constitutes "free instruction" under the Nebraska Constitution we conducted a thorough review of the case law and Attorney General's Opinions from around the nation regarding similar free education provisions in other states. Then, to confirm the perceived absence of direction on the issue from our own courts, we reviewed every reported decision in which the Nebraska Supreme Court mentioned the "free instruction" requirement contained in the Nebraska Constitution.
To our surprise we found that the answers to your questions lie not in the considerable body of case law from foreign jurisdictions, but rather in the jurisprudence of our own Nebraska Supreme Court. Far from being silent on the issue, the Court has set forth an extensive body of law on this subject spanning an entire century. The current school fee "crisis," it seems, is not so much a matter of errant school districts as it is a matter of widespread misunderstanding of the Nebraska Constitution.
The key to the issue of student fees under the free instruction clause is the distinction between a self-executing Constitutional provision and a non-self-executing provision. The Nebraska Supreme Court has made it quite clear that the free instruction provision in ArticleVII, § 1 of the Nebraska Constitution is not self-executing. The following discussion will consider the implications of this fact on the issue of student fees. The Opinion will then proceed to address each of your specific questions.
 Article VII, § 1 Is Not Self-Executing
Due to recent litigation, and the publicity and concern it has generated, it is now rather well understood by the public that the Nebraska Constitution contains a provision granting to every Nebraska child from age 5 to 21 years old the right to "free instruction in the common schools" of the State. It is widely assumed this provision, in and of itself, creates an enforceable cause of action or constitutional entitlement to completely free education in the public schools.
This assumption is mistaken. The right to "free instruction in the common schools" is not a fundamental Constitutional right. See Kolesnick v. Omaha Pub. Sch. Dist., 251 Neb. 575, 581, 558 N.W.2d 807 (1997). In fact, the free instruction provision is not even self-executing. Peterson v. Hancock, 155 Neb. 801, 810, 54 N.W.2d 85 (1952). See also Op. Att'y Gen. No. 97029 (May 21, 1997). This means the provision, in and of itself, imposes no duty on school districts nor does it bestow on children an enforceable Constitutional right, in the absence of action by the Legislature to implement the Constitutional provision. See State ex rel. Lamm v. Nebraska Bd. of Pardons, 260 Neb. 1000, 1006-1007,620 N.W.2d 763 (2001) ("A constitutional provision is not self-executing . . . if the language of the constitutional provision is directed to the Legislature. . . ."). See also Patteson v. Johnson, 219 Neb. 852, 857,367 N.W.2d 123, 127 (1985). Legislation is necessary to implement rights contained in a non-self-executing constitutional provision. Otherwise, "there are no remedies available for enforcement of such rights." Lamm,260 Neb. at 1007. This has been the consistent view of the Nebraska Supreme Court with respect to the free instruction provision since 1897.
In State ex rel. Shineman v. Bd. of Educ., 152 Neb. 644, 42 N.W.2d 168
(1950), the Court examined the free instruction clause of the Nebraska Constitution and concluded as follows:
 The Constitutional provision is clearly directed to the Legislature. We held in State ex rel. Walker v. Bd. of Commissioners, 141 Neb. 172, 3 N.W.2d 196, that a constitutional provision is not self-executing if the language of the Constitution is directed to the Legislature, or if it appears from the language used and the circumstances of its adoption that subsequent legislation was contemplated to carry it into effect. With reference to this provision we said in Affholder v. State, 51 Neb. 91, 70 N.W. 544, that the method and means to be adopted in order to furnish free instruction to the children of the state have been left by the Constitution to the Legislature. Clearly, legislation is necessary to carry into effect the Constitutional provision. It is not a self-executing provision. It follows that relators must find statutory authority to sustain this contention.
Id. at 647-648. (emphasis added).
The context of the Shineman case is particularly significant. In this case parents sued a school district to compel the district to establish a kindergarten for students who attained the age of five years, but not six years, on or before October 15. Such students were not old enough to be admitted to first grade. The parents' suit was based on the express Constitutional provision for free instruction of all persons between five and 21. Notwithstanding the explicit language of the Constitution, the Court found the parents' claim must fail in the absence of a statute implementing the right. The Court found the matter of creating a kindergarten program to be discretionary with the school district in accordance with state statutes governing classification of students and establishment of grades. Id.
The Shineman decision was consistent with Nebraska case law dating to 1897. In Affholder v. State, 51 Neb. 91, 70 N.W. 544 (1897), the plaintiffs sued a local school board to require the board to furnish free textbooks to the district's school children in accordance with an 1891 statute. Id. at 92. The Court reviewed the Constitutional provision for free instruction and concluded as follows:
 Section 6, Article 8 [now Article VII, section 1], of the Constitution of Nebraska provides: `The Legislature shall provide for the free instruction in the common schools of this state. . . .' What methods and what means should be adopted in order to furnish free instruction to the children of the State has been left by the Constitution to the Legislature. Prior to the passage of the Act under consideration instruction in all public schools was gratuitous, and by this Act the Legislature has seen fit to require the various school districts to purchase text-books necessary to be used in the schools. We do not think the term `text-books' should be given a technical meaning, but that it is comprehensive enough to and does include globes, maps, charts, pens, ink, paper, etc., and all other apparatus and appliances which are proper to be used in the schools in instructing the youth. . . ."
Id. at 93 (emphasis added).
Thus, the Court clearly held that the method and means of providing free instruction is up to the Legislature. Furthermore, the Court noted that prior to enactment of the statute requiring school districts to furnish the textbooks and supplies, only "instruction" in all public schools was free. In other words, the Court distinguished between tuition free "instruction" and free textbooks, maps, globes, pens, paper, and other "necessary" supplies. This means that free textbooks and other necessary supplies are encompassed within the parameters of the constitutional right to "free instruction" only because the Legislature has determined that they should be. This concept is not unfamiliar to college students who pay for instruction (tuition) separately from books and supplies.
Another significant case is State ex rel. Baldwin v. Dorsey,108 Neb. 134, 187 N.W. 879 (1922). In Baldwin the Court noted, "the Legislature jealously guards its supervision to the end that the Constitutional provision for free instruction in the public schools shall in all respects be fulfilled. Neb. Const. art. VII, § 6." Id. at 137. The Baldwin case involved the right of non-resident students to attend school without being charged additional tuition for optional courses. The Legislature had enacted a statute authorizing school districts that received non-resident students (receiving districts) to charge sending districts $1.50/week for each non-resident pupil accepted. Id. at 136. At issue was whether the receiving district could charge more than $1.50 where the school offered courses beyond those required by the State:
 In the case before us the evidence . . . discloses that the high school course at the Hebron school included several subjects which were not embraced in nor required by the high school manual, and hence it was not required that such subjects be taught in the high school in order to qualify it to accept pupils and to receive the statutory tuition fees from the school districts from which they were sent. It follows that a high school district that receives non-resident pupils from another school district, and which adds subjects or course of study which are not required by the high school manual, may not for that reason require the sending school district to pay tuition fees for its high school privileges in excess of the tuition fee fixed by the Legislature. Neither the parent nor the guardian of a non-resident pupil, under the facts of the present case, can be required to pay a tuition fee to a receiving school district.
Id. at 137.
Thus, the Court concluded the Legislature, as the guardian of free instruction in the public schools, had decreed that no more than $1.50/week/pupil could be charged (to sending districts) for non-resident student tuition even where the receiving district offered subjects and courses of study that were not part of the required state course of study or manual. Furthermore, the parents or guardians of the non-resident child could not be charged a tuition fee for the extra subjects. This case once again stands for the proposition that the boundaries of what constitutes "free instruction" are left to the Legislature to decide and generally will not be disturbed by the courts. See also Farrell v. Sch. Dist. No. 54, 164 Neb. 853, 84 N.W.2d 126 (1957). In Farrell, the Court stated, "Article VII, section 6, of this State's Constitution provides: `The legislature shall provide for the free instruction in the common schools of this State of all persons between the ages of five and twenty-one years.' This provision of the Constitution leaves all matters pertaining to schools and school districts . . . with the Legislature." Id. at 858.
Nebraska case law on this matter continues into more recent years. In 1988, the Court stated: "The Legislature is faced with the duty imposed on it by Neb. Const. art. VII, § 1, to furnish `free instruction in the common schools of this State of all persons between the ages of five and twenty-one years.' Since 1899, the Legislature has attempted in various ways to satisfy that duty. . . ." Ewing v. Scottsbluff Cty. Bd. of Equal., 227 Neb. 798, 801, 420 N.W.2d 685
(1988).
Finally, in 1993, Justice White wrote as follows: "From an analysis of Article VII of our Constitution, certain conclusions are readily apparent. Among them: (1) the Constitution does not define what constitutes "instruction," leaving that to be defined by the Legislature . . . (3) in determining whether "free instruction" has been denied, the courts may review the action of the Legislature and decide whether the instruction provided [by the school district] compares with the constitutional command. . . ." Gould v. Orr, 244 Neb. 163, 170,506 N.W.2d 349 (1993) (White, J. dissenting, in part). (emphasis added).
With this foundation, we will attempt to answer each of the 13 specific questions presented.
1, 3. Q: What is "free public instruction?" What is "free education?"
 A: The definitions of "free public instruction" and "free education" depend, as a legal matter, upon their context. If used in a statute containing defined terms, for example, they would have the meaning ascribed by the statutory definition. Outside such a context, the words would have their ordinary and common meaning. However, this answer is of little assistance in addressing your concerns. Although not stated, we assume your question pertains to the use of these terms in the Administrative Code. As used in section 001-01 of 92 NAC 19 we believe the term "free public education" is synonymous with "free instruction in the common schools of this State" as used in Article VII, section 1 of the Nebraska Constitution. This conclusion is based on the context of section 001-01 and the apparent intent to use the terms interchangeably.
Furthermore, at least one Judge of the Nebraska Supreme Court has equated a "common school" with a "free public school." Judge Shanahan stated, "A common school is `a free public school now usu[ally] including primary and secondary grades.'" State ex rel. Spire v. Beermann,235 Neb. 384, 402, 455 N.W.2d 749 (1990) (Shanahan, J., dissenting) (quoting Webster's Third New International Dictionary, Unabridged 459 (1981)). This further supports the conclusion that "free public instruction" is synonymous in Nebraska law with "free instruction in the common schools." Likewise, we conclude the term "free education" in the Administrative Code, unless otherwise defined, is synonymous with "free instruction" in the Constitution.
2. Q: What is "free instruction," as referenced in 92 NAC 19?
 A: Section 003 of 92 NAC 19 provides that "A public school district shall, upon request, enroll and provide free instruction to any person between the ages of 5 and 21 who has not completed high school. . . ." Based on a reading of Section 003 in the context of Chapter 19 as a whole, and especially in light of Section 001.01, we conclude that "free instruction" in Section 003 has the same meaning as "free instruction in the common schools" as used in Neb. Const. art. VII, § 1.
3. Q: What is "free education?"
A: See answer 1, above.
4. Q: What is a "free public education," as referenced in 92 NAC 19?
 A: For the reasons discussed above, we conclude "free public education" as referenced in 92 NAC 19 has the same meaning as "free instruction in the common schools" as used in Neb. Const. art. VII, § 1. See Spire v. Beermann, 235 Neb. at 402 (Shanahan, J., dissenting) (equating "common school" with a "free public school").
5 Q: What is the authority of school districts to charge a student fee?
 A: The powers and duties of a school district are narrow and specifically tailored by statute. The Nebraska Supreme Court has stated, "school boards are creatures of statute, and their powers are limited. Any action taken by a school board must be through either express or an implied power conferred by legislative grant." Busch ex rel. Knave v. Omaha Pub. Sch. Dist., 261 Neb. 484, 488, 623 N.W.2d 672 (2001) (emphasis added). As the Supreme Court has stated, "A school district is a creation of the Legislature. Its purpose is to fulfill the constitutional duty placed upon the Legislature. . . .'" Campbell v. Area Vocational Technical Sch. No. 2, 183 Neb. 318, 323, 159 N.W.2d 817 (1968) (quoting 78 C.J.S., Schools and School Districts, § 24, p. 656). Accord Banks v. Bd. of Educ. of Chase County, 202 Neb. 717, 719-720, 277 N.W.2d 76 (1979) (quoting Campbell) (emphasis added).
School districts are expressly authorized to charge fees for reproducing student files, Neb. Rev. Stat. § 79-2,104(2); for protective eye wear (for labs and vocational courses), Neb. Rev. Stat.79-715(1)(b) and for before-and-after school programs, Neb. Rev. Stat. § 79-1104. Conversely, they are prohibited from charging fees for textbooks, equipment, and supplies necessary for the schools of the district, Neb. Rev. Stat. § 79-734, as well as for transportation, Neb. Rev. Stat. § 79-611.
Neb. Rev. Stat. § 79-215(1) provides that resident students "shall be admitted to any such school district upon request without charge." Similarly, section 79-215(10) provides, "No tuition shall be charged for students who may be by law allowed to attend the school without charge." Thus, it is clear no tuition "fees" may be charged by school districts except as specifically authorized by statute.
It could be argued that since the Legislature has specifically authorized fees for copying student files and for protective eye wear, etc., no other fees are permitted, on the theory that what is not specifically included is thereby excluded. However, it can also be argued that Neb. Rev. Stat. §§ 79-734 and 79-611 support an opposite conclusion. Since the Legislature saw the need to expressly prohibit fees for transportation, textbooks, and "necessary" equipment and supplies, it may be inferred that fees for other items are not prohibited. We are of the opinion that the latter view is more persuasive. This conclusion is supported by Affholder v. State, 51 Neb. 91 (1897), as well as Att'y Gen. v. East Jackson Pub. Sch. 372 N.W.2d 638 (Mich.App. 1985).
Furthermore, the Legislature arguably has provided school districts broad enough authority in Neb. Rev. Stat. § 79-526 to charge student fees in certain circumstances. This statute provides as follows:
 The school board . . . has responsibility for the general care and upkeep of the schools, shall provide the necessary supplies and equipment, and except as otherwise provided, has the power to cause pupils to be taught in such branches and classified in such grades or departments as may seem best adopted to a course of study which the board shall establish with the consent and advice of the State Department of Education. . . . The board shall make rules and regulations as it deems necessary for the government and health of the pupils and devise any means as may seem best to secure the regular attendance and progress of children at school.
Neb. Rev. Stat. § 79-526. This conclusion is supported by Dykeman v. Bd. of Ed. of Sch. Dist. of Coleridge, Cedar County, 210 Neb. 596, 599316 N.W.2d 69 (1982) ("The board of education is given the general authority to manage and direct the schools within the district. This includes the power to conduct non-teaching and extra curricular duties as a part of the educational program."). See also Att'y Gen. v. East Jackson Pub. Sch., 372 N.W.2d 638 (Mich.App. 1985). In addition, this statute arguably limits the duty of school districts with regard to expenses. As quoted above, Neb. Rev. Stat. § 79-526 requires only that school boards "shall provide the necessary supplies and equipment." (emphasis added). Likewise, Neb. Rev. Stat. § 79-734 provides, "School boards . . . shall purchase all textbooks, equipment, and supplies necessary for the schools of such district. . . ." (emphasis added). See also Affholder, 51 Neb. at 93 ("by this Act the Legislature has seen fit to require the various school districts to purchase textbooks necessary to be used in the schools") (emphasis added). By implication, these Nebraska statutes require school districts to pay only for expenses which are "necessary" rather than optional.
Admittedly, the statutes are less than clear and our conclusion is not without some doubt. However, we believe this conclusion is warranted and further supported by the longstanding practice of the local school districts and apparent acquiescence by the Department of Education. The Nebraska Supreme Court has held that "[l]ong-continued practical construction of a statute by the officers charged by law with its enforcement is entitled to considerable weight in interpreting that law." Belitz v. City of Omaha, 172 Neb. 36, 45, 108 N.W.2d 421 (1961). Thus, a strong argument can be made that school districts do have authority to charge student fees for optional or non-necessary items. Nonetheless, clear direction from the Legislature in this regard would provide certainty and clarity to this question. See Ewing, 227 Neb. at 810
(discussing the authority of the Legislature to delegate legislative powers to the State Department of Education to supervise and administer the state school system).
6. Q: For purposes of drafting future Department rule clarifications, does "free instruction," as referenced in the Nebraska Constitution, and the current 92 NAC 19, encompass optional non-credit extracurricular programs such as football, marching band, debate, and vocational student groups such as FFA?
 A: Not necessarily. Under Nebraska law, free instruction includes what the Legislature says it includes (through legislation), or what the Department says it means under authority delegated from the Legislature. If the programs in question are not required by the Legislature through state law or regulation, they are not encompassed within the constitutional right to free instruction. As your office would be in a better position to ascertain the current scope of required instruction than this office, we decline to list specific programs.
6A: Q: Does the Department currently have any authority to promulgate a rule to provide school districts with the ability to charge fees or costs for such programs?
A: See response to question 7.
6B: Q: If the Department does not currently have that rule-making authority, may the Legislature give the Department that authority?
 A: Yes. As discussed above, the constitutional provision for free instruction is not self-executing, and the Legislature may determine the scope of what free instruction includes.
6C: Q: Are such programs part of a "free public education?"
A: See response to questions 4 and 6.
6D: Q: Could the Department promulgate a rule to allow a district to require that students provide supplies and equipment, such as uniforms or instruments, as a condition for participation in such programs, in light of Section 79-734 R.R.S.?
 A: Yes, but only for those supplies and equipment that are not "necessary" pursuant to Nebraska law. See response to question 5.
6E. Q: If a district may be given authority to charge fees for such programs, must provisions be made for fee waivers for students who are unable to pay the fees, so they are not excluded from participation on financial status?
 A: No, so far as the state and federal constitutions are concerned, but the Legislature may wish to consider doing so as a matter of public policy. "Optional" programs, as discussed above, are not encompassed within the right to free instruction unless specified by the Legislature. Also, there is no constitutional right to participate in sports or other optional activities. See Farver v. Bd. of Educ. Of Carroll County, 40 F. Supp.2d 323, 324 (D.Md. 1999) ("The right to participate in extra curricular activities, as distinguished from the right to attend school, is not considered to be a protected interest under the Fourteenth Amendment.").
Your question does raise the issue of equal protection. However, financial status is not a suspect classification. Therefore, it seems likely a district could articulate a rational basis for any perceived disparate treatment (ie. budget constraints and limited funding). We have not undertaken an analysis of federal regulations, if any, concerning financial status discrimination, but would do so upon request.
 Note: There may be distinctions between whether an optional course is encompassed within the right to free instruction for purposes of tuition and for purposes of fees for materials used in the course. See Affholder, 51 Neb. at 93. The Legislature may prohibit tuition for non-required instruction while permitting fees for materials. Id.
7. Q: Could the Department promulgate a rule change that states a school district, upon enrollment, "shall provide the programs and services of the school district to a student without charge, except as otherwise specified by law?"
 A: Yes, provided such rule is within the existing authority of the Department as delegated by the Legislature. Such a rule is clearly within the authority of the Legislature under Neb. Const. art. VII, § 1. We will explore the existing authority of the Department in this regard further if requested to do so.
8. Q: In light of Section 79-734 R.R.S. and the current 92 NAC 19 may a school district charge a "lab" or "materials" fee for supplies or equipment as a requirement for a student to take a class?
 A: Not if the supplies or equipment are "necessary" supplies or equipment. For example, if the lab fee was for materials essential to instruction in a required course, it would be impermissible.
 Conclusion
The Nebraska Constitution delegates to the Legislature the task of determining what "free instruction" will be available to Nebraska school children. Therefore, the answers to the various questions about what supplies or services a school district must provide at the district's expense, and what fees a district may charge must be found in the Nebraska statutes.
Generally speaking, it is our opinion that under current law a school district must provide free instruction for all courses which are required by state law or regulation and must provide all things necessary for that instruction, such as lab equipment, textbooks and so forth, without charge or fee to the student. For other activities which are not required by law or regulation, such as athletics, cheerleading, and chess club, the school district may require students to provide their own equipment and may charge fees, but the district is not required to do so. The Legislature, if it chooses to do so, may amend the law to either expand or limit the authority of school districts to charge fees.
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved by:
_________________________ Attorney General